[No. 1143.]

## THE STATE OF NEVADA, RESPONDENT, *v.* O. LEVIGNE, APPELLANT.

CRIMINAL LAW—INSTRUCTIONS—JUSTIFIABLE HOMICIDE—UNLAWFUL ACT.— The court was requested to give an instruction, that if the jury should find certain facts, then the defendant was justified unless the danger to him was brought about by himself, in " doing, or attempting to do, an unlawful act, amounting to a felony." The court struck out the words quoted, and inserted "unlawful shooting, or attempting to shoot, said Ricard with a deadly weapon:" *Held*, upon review of the evidence, that if defendant did, or attempted to do, any unlawful act amounting to a felony, it was in shooting, or attempting to shoot, Ricard; and that the court had the right, in its instructions, to specify the acts which would, if found true, deprive defendant of the justification claimed.

IDEM—PROVINCE OF INSTRUCTIONS.—The province of instructions from the court is to inform the jury what the law is, connected with the case in hand, and show them how to apply it to the particular facts involved.

IDEM—PROPERTY UNLAWFULLY DETAINED.—The court instructed the jury: " The law provides a remedy to a person if his property is unlawfully detained by another. and does not justify such person in assaulting the person or persons detaining it, in order to recover it:" *Held*, correct, and applicable to the evidence.

IDEM—WHEN COURT SHOULD GIVE INSTRUCTIONS.—Where evidence is offered to prove a certain state of facts, and the claim is made that they are proved, the court should, if requested so to do, charge the jury what the law is as applicable to the facts claimed to be proved.

IDEM—POSSESSION OF PROPERTY IMMATERIAL—MANSLAUGHTER.—In reviewing an instruction: *Held*, that it mattered not which of the parties owned the ore, or was in possession of it, lawfully or unlawfully, since the verdict was manslaughter only; that in any event the defendant was guilty of that unless, without his own fault, he had reason to believe, and did believe, as a reasonable man, at the time of the fatal shot, that he was in serious danger of receiving great bodily injury or of losing his life at the hands of Ricard.

DEADLY WEAPON—WHEN QUESTION OF LAW.—When the character of a weapon is not doubtful and does not depend upon its use, as, for instance, a loaded pistol, the court has the right to declare it a deadly weapon.

INSTRUCTIONS—ASSUMPTIONS OF FACT—ASSAULT—The court, in an instruction,

used the following language: "If you believe  * * *  that after Ricard had resisted the assault of said defendant, and by the assistance of one Bizans, taken away the pistol from defendant," etc.: *Held,* upon reviewing the entire instruction, that the jury could not have understood the court to assume, as a fact, that the defendant first assaulted Ricard, or assaulted him at all.

IDEM—GOOD CHARACTER.—The court, of its own motion, instructed the jury: "If you believe from the evidence that the defendant is guilty, then if the defendant has proved a previous good character for peace and quietness, such good character would be of no avail to him, and would not authorize an acquittal:" *Held,* not erroneous, and not in conflict with the instructions given at request of defendant.

IDEM—TESTIMONY OF GOOD CHARACTER.—Testimony as to the previous good character of a defendant is admissible in evidence and should always be considered by the jury in connection with all the other facts and circumstances; but if the jury believe from the evidence that the defendant is guilty, they must so find notwithstanding his good character.

APPEAL from the District Court of the Third Judicial District, Esmeralda County.

The facts appear in the opinion.

*Bennett & Reddy,* for Appellant:

I. The court erred in striking out a portion of the third instruction and substituting words of its own in lieu thereof, because there was no evidence upon which to base the words inserted by the court. There was no evidence that the defendant attempted to shoot, or did shoot, Ricard prior to the attack made by Ricard upon the defendant.

II. The court erred in giving the instruction as to the assault, because there is no evidence to show that the defendant assaulted Ricard in order to recover his property, but on the contrary, the evidence shows that the defendant undertook to remove property, and was feloniously assaulted by Ricard and Bizans.

III. The court erred in instructing the jury upon the question of Ricard's possession of the rock. There is no evidence to show that Ricard had either the actual or constructive possession of the ore. All of the evidence shows Ricard armed himself for the purpose of compelling defendant to pay him the sum of twenty-five dollars—not for the purpose of taking possession of the rock, but for the purpose of preventing the

defendant from exercising his legal right to remove said ore. Such unlawful acts cannot be magnified into possession of the property.

IV. The court erred in giving this instruction in assuming that the pistol was a deadly weapon.

V. The first and second instruction, as to good character, given by the court, are inconsistent, and in direct conflict with the instruction given by the court on its own motion. It will be observed that the jury was told that proof of good character must be considered in connection with the other facts of the case. In the instruction given by the court of its own motion, the court informed the jury that they might consider the other evidence in the case, and if from that evidence they believed the defendant guilty, then the evidence of good character could not avail the defendant. So in the one case they were told that they should consider the evidence of good character in connection with the other facts, and in the other that they may consider the other evidence separately, and even find the defendant guilty on a part of the evidence, and that they might in such case disregard the evidence of good character altogether. In the first instruction they were told in effect that although the evidence in the case, exclusive of that of good character, should be such as to leave no reasonable doubt in their mind as to the guilt of the defendant; that nevertheless proof of good character in such a case might be sufficient to create or generate in their minds a reasonable doubt as to the guilt of the defendant, and in the instruction given by the court, on its own motion, they were told that, if they believed from the evidence in the case, exclusive of that of good character, that the defendant was guilty, which must be the exact condition of the mind of a jury which has no reasonable doubt of a defendant's guilt, that proof of good character cannot avail the defendant in such case. Under these instructions it must have been very difficult for the jury to determine whether they should give the defendant the benefit of the proof of his good character in this case or not, or whether they had the arbitrary power to regard or disregard such proof. Such instructions could have but one effect, namely, to confuse the minds of the jurors. (*State* v. *Fer-*

*guson,* 9 Nev. 106; *People* v. *Campbell,* 30 Cal. 312.)   Proof of good character being admitted in evidence is a fact in the case, and the court has not a constitutional right to instruct the jury as to what weight shall be attached to it.   (*People* v. *Ashe,* 44 Cal. 291.)   We contend that the court, in this case, did not instruct the jury as to the weight they should give to such fact by stating to the jury that they had the right, under given circumstances, to ignore it altogether.

*T. H. Wells,* also, for Appellant:

I.  The peculiar wording of the third instruction was calculated to make the jury infer that the court believed the defendant to be guilty, which is beyond the province of the court in instructing a jury.   (*State* v. *Ah Tong,* 7 Nev. 148; *State* v. *Kennedy,* 7 Nev. 374; *Gerhauser* v. *N. B. & M. Ins. Co.,* 6 Nev. 15; *People* v. *Williams,* 17 Cal. 142; *People* v. *Byrnes,* 30 Cal. 206; *People* v. *Roberts,* 6 Cal. 214; Wells on Questions of Law 320.)

II.  The charge of the court to the jury, as a whole, is couched in exceptionable language, such as was well calculated to lead their minds away from, instead of up to a full, fair and impartial consideration of all the evidence—the undisputed duty of every jury.

III.  The instructions relating to good character misled the jury.   (*State* v. *Harkin,* 7 Nev. 377; Wells on Questions of Law 287.)

*W. H. Davenport,* Attorney-General, for Respondent:

I.  The court, in amending and adding to instruction No. 3, as asked by defendant, did no more than to make the instruction applicable to the facts of the case, and give point to the instruction, which we claim the court had a right to do, so long as the law applicable to the facts was correctly enunciated.   (*State* v. *Smith,* 10 Nev. 120; *State* v. *Davis,* 14 Id. 413.)

II.  The charge of the court to the jury correctly and fairly presented the case to the jury, and it cannot be said that the jury were misled.   (*State* v. *McGinnis,* 5 Nev. 337.)

III.  Admitting that the act of the deceased, in holding pos-

session of the ore, was a trespass upon the rights and property of the defendant, the defendant is not justified in attempting to regain possession by force of arms, as shown by the testimony in this case. (Wharton on Hom. p. 185; *Commonwealth* v. *Drew*, 4 Mass. 391; *State* v. *Morgan*, 3 Ire. 186; *McDaniel* v. *State*, 8 S. & M. 401; *Oliver* v. *State*, 17 Ala. 588; *State* v. *Shippy*, 10 Minn. 223.)

By the Court, LEONARD, J.:

Appellant was convicted of the crime of manslaughter, for the killing of Joseph Ricard, in Esmeralda county, May 29, 1882. He appeals from an order overruling his motion for a new trial, and from the judgment.

1. The defendant requested the court to instruct the jury as follows: "Third: If the jury find from the evidence that the defendant, as a reasonable man, had cause to believe, and did believe, that, at the time he shot at Joseph Ricard, he was in serious danger of receiving great bodily injury or of being killed by said Ricard, unless he shot said Ricard, he was justified in shooting him, unless the jury find from the evidence, beyond a reasonable doubt, that the danger to the defendant was brought about by himself, in *doing or attempting to do an unlawful act, amounting to a felony.*"

The court struck out the last part of the instruction in italics, and inserted the following in lieu thereof: "Unlawfully shooting or attempting to shoot said Ricard with a deadly weapon." The court also added these words: "And if you find from the evidence that the defendant unlawfully shot or attempted to shoot said Ricard with a deadly weapon, then his fear of injury from said Ricard, if really entertained by the defendant, would not justify the defendant, for then the defendant would bring such danger upon himself by his own fault."

As amended the instruction was given to the jury, and it is urged that, in making the amendments, the court erred, because there was no evidence that the defendant first shot or attempted to shoot Ricard.

Counsel for appellant are in error.

Two witnesses testified in relation to the affray—Thomas Callow for the state, and the defendant in his own behalf.

Defendant claimed certain ore on Candelaria mountain, and proposed to take it away from the mine. Ricard, the deceased and one Bizans, claimed there was due from defendant to them twenty-five dollars on account of a former shipment, and refused to allow defendant to remove the ore until he paid the amount stated. Defendant testified that the ore in question was his; that he took it out of a mine leased by him. Callow testified that defendant engaged him on the evening of the twenty-eighth of May to go to the mine and haul away the ore, and told him that he anticipated trouble; that he, the witness, on the morning of the twenty-ninth, went for the ore, with the defendant and his teamster. Witness arrived first at the mine, and soon after the teamster and defendant came. Callow found Ricard and Bizans at the mine, standing guard over the ore.

Defendant said he came for the ore, and that he was going to take it. Ricard replied that he could not take it until he paid the twenty-five dollars before mentioned. Defendant attempted to put a sack into the wagon, and Ricard stepped toward him, telling him he could not take the ore. Defendant pulled out a pistol, threatened to kill Ricard and used other violent language. Ricard took hold of him and called for assistance to take the pistol away. Bizans took the pistol from him and hid it in a blacksmith shop, some ten or fifteen yards away. In the scuffle a shot from the pistol was accidentally discharged.

After Bizans took the pistol away, Ricard beat defendant with his fists and kicked him in the stomach, after which he stepped back a few feet, still saying defendant could not have the ore. Defendant was able to rise to his feet. In about a minute afterwards defendant drew a second pistol and shot Ricard, who was some steps distant from him, walking backward, the side of his face having been toward defendant. In a minute or so Ricard died from the effect of the last shot.

Ricard wore an overcoat, and when the fatal shot was fired he held his hands in his coat pockets.

After he was shot, Ricard drew a pistol and fired three or four times at defendant.

Witness did not hear Ricard make any threats against

defendant, or see him make any attempt to draw a weapon previous to the fatal shot.   He only heard him say that defendant should not take away the ore.   He saw no arms upon Ricard until after he was shot.   Ricard and Bizans were larger and stronger than defendant.   Defendant made the first threat, and first drew a pistol.   After he had been disarmed, Ricard beat him as before stated, and in a minute or so, when the deceased was some ten feet from him, standing with his side towards him, making no threatening demonstrations against him, he again drew his pistol and fired, with the result stated.

By the third instruction, as presented by counsel for appellant, the court was asked to charge the jury that, if they should find true the facts first mentioned, then the defendant was justified, unless they should also find that his danger was brought about by himself, " in doing, or attempting to do, an unlawful act amounting to felony."

Certainly if defendant did, or attempted to do, any unlawful act amounting to a felony, it was in shooting or attempting to shoot Ricard.   It was not claimed or shown that he did anything else.   It was those acts—if they caused defendant's real or apparent danger—which would not justify him in shooting Ricard.   Why, then, should not the court specify the acts which, should they be found true, would deprive defendant of the justification claimed ?

" The province of instructions from the court is to inform the jury what the law is, connected with the case in hand, and show them how to apply it to the particular facts involved." (Wells on Questions of Law and Fact, 287; *Morris* v. *Platt*, 32 Conn. 81.)

If the defendant ought to have failed in his attempted justification, in case he did some one thing, why not tell the jury so in plain language, instead of indulging in generalities ?

The court did not err in giving the third instruction as amended.   (*State* v. *Smith*, 10 Nev. 120.)

2. The court gave the following instruction:   " The law provides a remedy to a person if his property is unlawfully detained by another, and does not justify such person in

assaulting the person or persons detaining it, in order to recover it."

It is not denied that this instruction correctly states the law. (Wharton on Homicide, sec. 414; *Commonwealth* v. *Drew*, 4 Mass. 395; *State* v. *Morgan*, 3 Ired. 186; *Oliver* v. *The State*, 17 Ala. 588.)

But it is said the court erred in giving it, because there was no evidence to show that defendant assaulted Ricard in order to recover his property, but that, on the contrary, it shows defendant undertook to recover his own property, and was feloniously assaulted by Ricard and Bizans.

The jury has found, under proper instructions, and on sufficient evidence, that defendant first assaulted Ricard.

The instruction was applicable to the facts, according to the state's theory of the case, and as shown by its evidence.

" Where evidence is offered by either party to prove a certain state of facts, and the claim is made that they are proved, and the court is requested to charge what the law is, as applicable to them, and what verdict to render if they find them proved, the court must comply." (*Morris* v. *Platt, supra,* 82; *Moresi* v. *Swift*, 15 Nev. 221.)

3. The court charged the jury: " If you believe from the evidence that the defendant, O. Levigne, claimed certain rock, or ore, in the possession of one Joseph Ricard, the person named in the indictment, and that said Ricard claimed the possession of said rock, or ore, until he was paid by the defendant a sum of money, claimed by said Ricard to be due him by the defendant; and that while said Ricard was so in the possession of said rock, or ore, that the defendant forcibly, and without the consent of said Ricard, endeavored to deprive said Ricard of the possession of said rock, or ore, and in such endeavor assaulted said Ricard with a pistol, a deadly weapon, then such assault by the defendant was unjustifiable; and said Ricard had the right to resist such assault, and in such resistance to use such force, and all force, upon the person of the defendant, as was necessary to prevent the defendant from doing him a bodily injury; and if you believe, from the evidence, that after said Ricard had resisted such assault upon him, and had, by the assistance of one Bizans, taken away the pistol

from the defendant, the defendant, with another pistol in his possession, renewed the assault upon said Ricard, by first firing upon him and killing him with such pistol, then such killing was not justifiable, or in self-defense."

Against this instruction several objections are urged.

It is first said that the court erred in instructing the jury on the question of Ricard's possession of the ore, for the reason that there was no evidence to show that he had either actual or constructive possession.

This objection is frivolous. If we admit that the ore was the property of the defendant, and that Ricard was a trespasser, still these facts afford no justification to defendant. If the ore belonged to him, and Ricard had no lien thereon, or right of possession thereof, then defendant had the right to retain possession, if he had it, or to retake it by proper means, if it had been unlawfully taken from him.

But he was entirely without justification in doing what he did, in order to enjoy his lawful rights in the property. It matters not which of the contending parties owned the ore, or was in possession of it, lawfully or unlawfully, since the verdict of the jury was manslaughter only, because, in any event, the defendant was guilty of that, unless, without his own fault, he had reason to believe, and did believe, as a reasonable man, at the time of the fatal shot, that he was in serious danger of receiving great bodily injury, or of losing his life at the hands of Ricard. (See authorities above cited.)

It is next said that the court erred in assuming that the pistol accidentally discharged and taken away from defendant was a deadly weapon.

Under some circumstances it is undoubtedly proper to submit to the jury the question whether or not a weapon is deadly. This is so when the character of the weapon is doubtful, or when the question depends upon the manner of its use. But in this case the weapon was a loaded pistol that was discharged. Such having been the facts, the question was one of law for the court. And, considering the manner the pistol was used, the court had the. undoubted right to declare it a deadly weapon, for such it was. (*State* v. *Rigg*, 10 Nev. 289; *State* v. *Davis*, 14 Nev. 413; Wharton on Homicide, sec. 401; C. L., sec. 2346.)

Again, it is urged that the court erred in giving this portion of the instruction quoted: " If you believe, from the evidence, that after Ricard had resisted the assault of said defendant, and, by the assistance of one Bizans, taken away the pistol from defendant," etc.   The claim is that, in so instructing the jury, the court assumed as a fact that Ricard resisted an assault made by defendant; in other words, that the court assumed, and so charged the jury, that defendant assaulted Ricard.

But the instructions must be read as a whole, and when so considered, they are not open to the objections urged.   In the same instruction the court said:   " If you believe, from the evidence, that the defendant   *   *   *   endeavored to deprive said Ricard of the possession of said rock, or ore, and in such endeavor assaulted said Ricard with a pistol, a deadly weapon, then such assault by the defendant was unjustifiable, and said Ricard had the right to resist such assault," etc.

Then the court added:   "And if you believe, from the evidence, that after said Ricard had resisted such assault upon him, and had, by the assistance of one Bizans, taken away the pistol from the defendant, the defendant, with another pistol in his possession, renewed the assault upon said Ricard, by first firing upon him and killing him with such pistol, then such killing was not justifiable or in self-defense."

From the entire instructions the jury could not have understood the court to assume, as a fact, that the defendant first assaulted Ricard, or assaulted him at all.

That fact was to be found from the evidence, if at all, by the jury.

4. At the request of the defendant the court charged the jury as follows:

First—" If the defendant has been proved of good character as a man of peace, such good character may be sufficient to create or generate a reasonable doubt of his guilt, although no such doubt would have existed without such proof of good character."

Second—" In a criminal action evidence on behalf of the defendant of his previous good character is relevant to the question of guilty or not guilty, and is to be considered by the jury in connection with other facts of the case."

Upon its own motion the court gave the following upon the subject of good character:  "If you believe, from the evidence, that the defendant is guilty, then if the defendant has proved a previous good character for peace and quietness, such good character would be of no avail to him, and would not authorize an acquittal."

It is strenuously urged by counsel for appellant that the instruction given by the court on its own motion is inconsistent and in direct conflict with the first and second instructions given at the request of defendant.

It is said that the jury were first told that proof of good character might be sufficient to create a reasonable doubt of defendant's guilt, although no such doubt would have existed without such proof; that evidence of good character was relevant to the question of guilty or not guilty, and that it was to be considered in connection with other facts in the case.

It is also claimed that by the last instruction quoted, the jury were told they might consider the other evidence in the case, and if from that they believed the defendant guilty, then the evidence of good character could not avail him.  In other words, that the jury were told by one set of instructions to consider the evidence of good character in connection with the other facts, and by another to consider the other evidence separately, and if that was sufficient to convict, to disregard the evidence of good character altogether.

A court should not give conflicting instructions, and we do not think it did so in this instance.

The jury were first told that they might consider the evidence of good character in connection with the other evidence in the case, in deciding the question of guilt or innocence.

By the court's instruction they were told, if they believed from the evidence—that is to say, from all the evidence in the case, including that in relation to good character—that the defendant was guilty, then proof of previous good character for peace and quietness would not authorize his acquittal.

By the three instructions under consideration the jury were charged to consider all the testimony admitted in the case, including that in relation to previous good character, and if from the whole they believed the defendant guilty, then they

should not acquit him, although he had borne a good character previously.

The court did not withdraw any portion of the evidence from the jury, or permit them to do so, in making up their minds as to his guilt or innocence. (*People* v. *Gleason*, 1 Nev. 176.)

In *State* v. *Henry*, 5 Jones Law R., N. C., 66, the lower court charged the jury that: "In a plain case a good character would not help the prisoner; but in a doubtful case he had a right to have it cast into the scales and weighed in his behalf."

On appeal the supreme court said: "The charge of his honor to the jury, as to the effect of the testimony in relation to the character of the prisoner, was, in our opinion, erroneous. It is not a rule of law that, in a plain case, the jury must consider the evidence of the prisoner's good character, and that it is only in a doubtful case that he has a right to have it cast into the scales and weighed in his behalf.

It is admitted that, in all cases, a person accused of a crime of any grade, whether a felony or misdemeanor, has a right to offer in his defense testimony of his good character. Whatever is admitted as competent evidence must be for the consideration of the jury. Who, then, is to decide whether the case is a plain one, by which the testimony is to be withdrawn from them? It cannot be the court, because that would be deciding on the facts, and thus usurping the province of the jury. It cannot be the jury, because that would be deciding the preliminary question of competency, and thus usurping the province of the court. The advocate of the rule is thus placed in a dilemma, by taking either horn of which he is involved in an absurdity.

The true rule is that the testimony is to go to the jury and be considered by them, in connection with all the other facts and circumstances, and if they believe the accused to be guilty, they must so find, notwithstanding his good character.

The pretended rule probably grew out of a remark which a judge might very properly make to a jury, that if they believed the defendant was guilty they ought not to acquit, although he had proved that he was a man of good character.

Such a remark, properly understood, does not withdraw the consideration of character from the jury; it presupposes that the testimony of character has been duly weighed by them, and it can legitimately operate only as a caution to the jury; thus, the testimony is not of itself to preponderate over all the other facts and circumstances given in evidence, and thus produce an acquittal, merely because the party charged had previously borne a good character."

We find no error in the instructions, and the evidence justified the verdict.

The judgment and order appealed from are affirmed.