[No. 1298.]

# THE STATE OF NEVADA, Respondent, v. GEORGE I. SLINGERLAND, Appellant.

CRIMINAL LAW — LARCENY—INTENT—LUCRI CAUSA—INSTRUCTIONS.—The court instructed the jury that if they believed that the defendant took the property "with the intent to permanently deprive the owner of the property, and without an intention to return the same, it was a felonious intent, and the defendant is guilty": *Held*, correct. It is not essential that the taking should be with a view to pecuniary profit.

IDEM—CREDIBILITY OF DEFENDANT'S TESTIMONY.—Where a defendant in a criminal case offers himself as a witness in his own behalf, the jury should give to his testimony all the credit to which it is entitled. In ascertaining the extent of its credibility, it is proper and necessary for the jury to consider the situation in which defendant is placed.

INSTRUCTION—CIRCUMSTANTIAL EVIDENCE—DEGREE OF CERTAINTY.—The court instructed the jury "that where the evidence is entirely circumstantial, yet is not only consistent with the guilt of the defendant but inconsistent with any other rational conclusion, the law makes it the duty of the jury to convict, notwithstanding such evidence may not be as satisfactory to their minds as the direct testimony of credible eye-witnesses." (2d instruction referred to in opinion.) *Held*, correct.

IDEM—EVIDENCE OF GOOD CHARACTER.—In reviewing an instruction as to the weight to be given to the evidence of the good character of the defendant: *Held*, that upon the question of defendant's guilt or innocence juries should be charged to consider all the evidence in the case, including that in relation to character, and if therefrom they believed him guilty beyond a reasonable doubt, previous good character would not authorize an acquittal

IDEM—WHEN JUDGMENT WILL NOT BE REVERSED ON IMPROPER INSTRUCTIONS.—*Held*, that although the instruction in relation to the good character of the defendant as given was not proper, yet it should not reverse the judgment because all the testimony, including his own, made him guilty, no matter how fair a character he had previously borne.

APPEAL from the District Court of the Sixth Judicial District, Eureka County.

The facts are sufficiently stated in the opinion and head-notes.

*Fitzgerald & Beatty,* for Appellant:

I. The court erred in instructing the jury that the good character of defendant could only be considered when the jury had a reasonable doubt of his guilt. (*Field* v. *Columbet,* 4 Saw. 523; *People* v. *Ashe,* 44 Cal. 292; *People* v. *Lamb,* 2 Keyes, 378; *Fields* v. *State,* 47 Ala. 603;[1] Ros. Cr. Ev. 97; 1 Greenl. Ev. 74.)

II. The court erred in giving the fourth instruction. The most essential element in larceny is the intent of gain, *lucri causa.* (*People* v. *Woodward,* 31 Hun, 57; *State* v. *Hawkins,* 8 Port. 461; 33 Am. Dec. 294; *Smith* v. *Shultz,* 1 Scam. 490; 32 Am. Dec. 34; *Wilson* v. *People,* 39 N. Y. 459; *U. S.* v. *Durkee,* 1 McAll. 196; 2 Whart. Am. Cr. Law, secs. 1796–1801.)

*W. H. Davenport,* Attorney General, and *H. F. Bartine,* for Respondent:

I. The instruction as to character correctly states the law as applicable to the testimony given in this case.

Where the act charged is *malum in se,* is clearly proved or admitted, and no circumstance of extenuation or justification appear, the evidence of good character has no tendency to either prove or disprove any issue involved in the case, and should be entirely disregarded by the jury. (*Com.* v. *Hardy,* 2 Mass. 317; *State* v. *McDaniels,* 8 S. & M. 401; *Wesley* v. *State,* 37 Miss. 351;[2] *U. S.* v. *Smith,* 2 Bond, 323; *U. S.* v. *Rondenbush,* Bald. 514; *U. S.* v. *Freeman,* 4 Mason, 510; *People* v. *Vane,* 12 Wend. 82; *State* v. *Brown* (note), 3 Strob. 527; *State* v. *Wells,* 1 Coxe, 428; *People* v. *Cole,* 4 Park. Cr. Rep. 35; *People* v. *Milgate,* 5 Cal. 127; *People* v. *Roberts,* 6 Cal. 214; *People* v. *Josephs,* 7 Cal. 129; *State* v. *Gleason,* 1 Nev. 173; *State* v. *Pearce,* 15 Nev. 191; *People* v. *Kirby,* 1 Wheel. Cr. C. 64; *People* v. *Hammill,* 2 Park. Cr. Rep. 223; *Reg.* v. *Davidson,* 31 St. Tr. 217; *Bennett* v. *State,* 8 Hump. 118; see also *State* v. *Northrup,* 48 Iowa, 583;[3] *People* v. *Bell,* 49 Cal. 488; *State* v. *McMurphy,* 52 Mo. 251; *Coleman* v. *State,* 59 Miss. 484.)

---

1  11 Am. Dec. 771.          2  75 Am. Dec. 62.          3  30 Am. Rep. 408.

II. The fourth instruction states a correct principle of law. The court did not err in omitting to state that there must be *lucri causa* in order to constitute larceny. If property be taken with intent to deprive the owner of it, the injury to him is just the same, whether the act be prompted by a desire for gain or any other motive, and the purpose of the law is to protect the owner in the enjoyment of his property. (Bish. on Cr. L., secs. 842–8; *Rex* v. *Morfit*, Russ. & Ry. 307; *Reg.* v. *Jones*, 1 Den. C. C. 188; *Reg.* v. *Privett*, Id. 193; *State* v. *Brown*, 3 Strob. 508; *Keely* v. *State*, 14 Ind. 36; *Dignowitty* v. *State*, 17 Tex. 521;[1] *Hamilton* v. *State*, 35 Miss. 214; *Warden* v. *State*, 60 Miss. 638; *People* v. *Juarez*, 28 Cal. 380; *State* v. *Ryan*, 12 Nev. 401.[2]

By the Court, LEONARD, J.:—

Appellant was convicted of the crime of grand larceny. He appeals from the judgment, and the order overruling his motion for new trial. He was accused and found guilty of stealing two horses, two saddles, and a pair of spurs. He admitted that he took the property, and removed it about five miles away. He said his object was to put the owner to all the expense and trouble possible in order to find the property; that he had no idea of benefiting himself in any way, his only object having been to get revenge.

I. The court instructed the jury that if they believed beyond a reasonable doubt that the defendant took the property, as alleged in the indictment, with the intent to permanently deprive the owner of the property, and without an intention to return the same, it was a felonious intent, and the defendant was guilty. It is claimed that this instruction is erroneous in stating that the crime of grand larceny may be committed, although the taker of the property alleged to have been stolen derives no benefit, and does not intend or expect to be benefited therefrom. If one of the essential elements of larceny is an intention to profit by the conversion of the property, then the instruction under consideration was incorrect. A court cannot instruct a jury that certain facts constitute a certain offense, unless every essential fact necessary to constitute the offense be included in the statement. (*Weston* v. *U. S.*, 5 Cranch C. C. 494.) Although the authorities upon this question are somewhat conflicting, those sustaining the instruction greatly pre-

1 67 Am. Dec. 670.　　2 28 Am. Rep. 802.

ponderate, and in our opinion they are upheld by good sense and sound reason.

In *State* v. *Ryan,* 12 Nev. 403,[1] this court acknowledged the correctness of the principle that where the intent is to deprive the owner of his property, it is not essential that the taking should be with a view to pecuniary profit.

In *Dignowitty* v. *State,* 17 Tex. 530,[2] the court said: "But to constitute the felonious intent, it is not necessary that the taking should be done *lucri causa;* taking with an intention to destroy will be sufficient to constitute the offense, if done to serve the offender, or another person, though not in a pecuniary way."

And, said the court, in *Hamilton* v. *State,* 35 Miss. 219: "The rule is now well settled that it is not necessary, to constitute larceny, that the taking should be in order to convert the thing stolen to the pecuniary advantage or gain of the taker, and that it is sufficient if the taking be fraudulent, and with an intent wholly to deprive the owner of the property. (Roscoe, Cr. Ev., 533, 2d ed.; *Cabbage's Case,* Russ. & R. 292; *Rex* v. *Morfit,* Id. 308.) And it is said by the commissioners of criminal law in England that 'the ulterior motive by which the taker is influenced in depriving the owner of his property altogether, whether it be to benefit himself or another, or to injure any one by the taking, is immaterial.' The rule we consider to be in accordance with the principle on which the law of larceny rests, which is to punish the thief for wrongfully and feloniously depriving the owner of his property. The reason of the law is to secure a man's property to him, and that is to be carried out, rather by punishing the thief for feloniously depriving him of it, than for wrongful gain he has made by the theft. The moral wrong is founded in the wrongful and felonious deprivation."

Sustaining the same doctrine in *Warden* v. *State,* 60 Miss. 640, the court said: "It seems to meet the approval, also, of most of the modern writers on criminal law, and to be sanctioned by many cases, both English and American."

In *State* v. *South,* 28 N. J. Law, 28, the question was, whether the fraudulently depriving the owner of the temporary use of a chattel is larceny at common law; whether the felonious intent or *animus furandi* may consist with an intention to return the chattel to the owner. It was held that if the prop-

1  28 Am. Rep. 802.          2  67 Am. Dec. 670.

erty is taken with the intention of using it temporarily only, and then returning it to the owner, it is not larceny; but if it appear that the goods were taken with the intention of permanently depriving the owner thereof, then it is larceny. And in *State* v. *Davis*, 38 N. J. Law, 177, the same court adhered to the doctrine announced in *South's Case*, and said: "There has been no case decided in this state that has held that where the taker had no intention to return the goods, that the taking was merely temporary. Nor is there anything that should control the action of the jury, or the court acting as such under the statute, when they find that the party having no such intent is guilty of larceny. It would be a most dangerous doctrine to hold that a mere stranger may thus use and abuse the property of another, and leave him the bare chance of recovering it by careful pursuit and search, without any criminal responsibility in the taker."

In *Berry* v. *State*, 31 Ohio St. 219,[1] and *Com.* v. *Mason*, 105 Mass. 166,[2] it was held that the wrongful taking of the property of another, without his consent, with intent to conceal it until the owner offered a reward for its return, and for the purpose of obtaining the reward, was larceny of the property taken. (And see also *People* v. *Juarez*, 28 Cal. 380; *State* v. *Brown*, 3 Strobh. 516; *Keely* v. *State*, 14 Ind. 36; *Rex* v. *Cabbage*, Russ. & R. 292; *Rex* v. *Morfit*, Id. 307; note *a* to *Holloway's Case*, 1 Denison Cr. Cas. 376.) Counsel for appellant places great reliance upon *State* v. *Hawkins*, 8 Port. (Ala.) 461,[3] wherein it was held that taking a slave in order to set her free was not larceny; but the doctrine of that case has been repudiated by the same court in the case of *Williams* v. *State*, 52 Ala. 413, decided in 1875, wherein it was said: "The second charge was also properly refused. To constitute the offense of larceny, it is not necessary the taking should have been with an intent to appropriate the goods to the use or benefit of the person taking. The criminal intent consists in the purpose to deprive the owner of his property. No benefit to the guilty agent may be sought, but only injury to the owner."

Reliance is also placed upon section 1783 of Wharton's American Criminal Law, where the author says: "In this country there has been some reluctance to accept this supposed modification of the common-law definition of larceny, and in one or two cases it has been expressly rejected. Thus it has

---

1   27 Am. Rep. 506.          2   7 Am. Rep. 507.          3   33 Am. Dec. 294.

been declared not to be larceny, but malicious mischief, to take the horse of another, not *lucri causa*, but in order to destroy him"; citing *State* v. *Council*, 1 Tenn. 305; *Com.* v. *Leach*, 1 Mass. 59; *People* v. *Smith*, 5 Cow. 258; and *State* v. *Wheeler*, 3 Vt. 344, as authorities for the statement.

It will be found, upon an examination of those cases, that no one of them sustains the text.

Mr. Stephen, in his General View of the Criminal Law of England, 127, says: "It is larceny to take and carry away a personal chattel from the possession of its owner with intent to deprive him of the property."

Mr. Roscoe, in his Criminal Evidence, 631, says: "Eyre, C. B., in the definition given by him, says, 'Larceny is the wrongful taking of the goods with intent to spoil the owner of them *lucri causa*'; and Blackstone says, 'The taking must be felonious; that is, done *animo furandi*, or, as the civil law expresses it, *lucri causa.*' The point arrived at by these two expressions, *animo furandi* and *lucri causa*, the meaning of which has been much discussed, seems to be this: that the goods must be taken into the *possession* of the thief with the intention of depriving the owner of his property in them. * * * Property is the right to the possession, coupled with an ability to exercise that right. Bearing this in mind, we may perhaps safely define larceny as follows: The wrongful taking *possession* of the goods of another with intent to deprive the owner of his *property* in them." (And see Archb. Crim. Pr. & Pl., Pomeroy's notes, 1185; Barb. Crim. Law, 174; 2 Bish. Crim. Law, 848.)

Against these authorities, besides Hawkins's case and Wharton, above cited, we are referred to four cases, viz.: *People* v. *Woodward*, 31 Hun, 57; *Smith* v. *Schultz*, 1 Scam. 490; *Wilson* v. *People*, 39 N. Y. 459; and *U. S.* v. *Durkee*, 1 McAll. 196. In Woodward's case there was an able and exhaustive dissenting opinion by one of the three justices, and no authorities are cited in support of the majority opinion except Whart. Crim. Law, sec. 1784, and certain cases therein referred to, which do not sustain the text. In *Smith* v. *Schultz*, the court only says: "Every taking of the property of another without his knowledge or consent does not amount to larceny. To make it such, the taking must be accompanied by circumstances which demonstrate a felonious intention."

But the court does not say there can be no felonious intent except there be a taking *lucri causa.* In *Halloway's Case,* Parke, B., defined "felonious" to mean that there is no color of right or excuse for the act, and the intent must be to deprive the owner, not *temporarily,* but *permanently,* of the property. In *Wilson's Case* it was only decided that the felonious intent must exist at the time of the taking. In *Durkee's Case* the court instructed the jury as follows: " 1. That if you believe, from the evidence, that the prisoner took and carried away the arms with the intent to appropriate them, or any portion of them, to his own use, or permanently deprive the owner of the same, then he is guilty. 2. But if you shall believe that he did not take the arms for the purpose of appropriating them, or any part thereof, to his own use, and only for the purpose of preventing their being used on himself or his associates, then the prisoner is not guilty."

There is nothing in the instructions quoted opposed to the doctrine we are endeavoring to maintain, although there is much in the address to the jury which does not accord with our ideas of the law. To constitute larceny the taking must be felonious, and it is so when the intent is to permanently deprive the owner of his property against his will. The court did not err in giving the fourth instruction.

2. Objection is made to the third instruction, which is substantially the same as was given in *Hing's Case,* 16 Nev. 310. (See also *People* v. *Cronin,* 34 Cal. 203, and *People* v. *Morrow,* 60 Cal. 147.) When a defendant in a criminal case offers himself as a witness in his own behalf, it is the duty of the jury to give to his evidence all the credit to which it is entitled; but in ascertaining the extent of its credibility, it is proper and necessary to consider the situation in which he is placed. A person accused of a crime may speak the truth, and it is for the jury to say, in view of all the facts, whether or not he has done so, in the whole or in part. They should give proper weight and effect to all of his evidence, if they are convinced of its truth, or so much thereof as, in their best judgment, is entitled to credit. Such, we think, is the natural construction to be placed upon the instruction under consideration.

3. The second instruction was correct. (*People* v. *Cronin,* 34 Cal. 191; *State* v. *Nelson,* 11 Nev. 341.)

4. The first instruction given on behalf of the state is as follows: "The court instructs the jury that the good character of the defendant can only be taken into consideration when the jury have a reasonable doubt as to whether the defendant is the person who committed the offense with which he is charged; and if you believe from the evidence that the defendant is guilty, then if the defendant has proved a previous good character, such good character would be of no avail to him, and would not authorize an acquittal."

The first part of this instruction was copied from that given in *People* v. *Gleason*, 1 Nev. 176, and in that case upheld by this court. The last portion was taken from the court's instruction in *Levigne's Case*, 17 Nev. 445, given in connection with two other instructions requested by the defendant. In that case we said: "By the three instructions under consideration the jury were charged to consider all the testimony admitted in the case, including that in relation to previous good character, and if, from the whole, they believed the defendant guilty, then they should not acquit him, although he had borne a good character previously."

Such we declared was the true rule. It was consonant with reason, and upheld by the latest and best authorities.

The instruction given and upheld in Gleason's case we do not like; and we did not say that the court's instruction in Levigne's case would have been correct by itself alone. We only declared it correct as it was given, in connection with the two requested by defendant. We do not like the first instruction given in this case. All in all, it conveys to our minds the idea that evidence of the defendant's good character could not be considered, unless, from the other evidence admitted, the jury had a reasonable doubt of the defendant's guilt. Upon the question of guilt or innocence, they should have been charged to consider all the evidence in the case, including that in relation to character, and if therefrom they believed him guilty beyond a reasonable doubt, previous good character would not authorize an acquittal.

But although the instruction in question was not proper, it ought not, in this case, to reverse the judgment, because the undisputed facts, his own testimony included, made him guilty, no matter how fair a character he had previously borne. He admitted the taking, and did not claim that he intended to

return the property to the owner at any time. It was not to be returned, and the owner was not to get it back, unless, after much trouble and expense, he might succeed in finding it. After the larceny was committed, he told the owner that he had taken the property, and where it could be found; but this was done in consideration of a promise not to prosecute him for taking another horse, not voluntarily. The jury must have found that appellant intended to deprive the owner permanently of his property, for they were instructed to acquit him if he took it with the intent to hide the same and make trouble for the owner, and then return it, and not to derive any benefit therefrom. If appellant had taken the property just as he did, for the purpose of gain to himself, rather than out of revenge, it is conceded that he would have been guilty of the offense charged. In that case, no amount of testimony establishing former good character could have induced a doubt of guilt. In view of our conclusion upon the fourth instruction, the same is true now.

Judgment and order appealed from affirmed.