El Pueblo, Demandante y Apelado, *v.* Arroyo, Acusado y Apelante.

Apelación procedente de la Corte de Distrito de Humacao en causa por hurto menor.

No. 1738.—Resuelto en junio 21, 1921.

Hurto—Intención de Privar al Dueño Permanentemente de la Cosa Hurtada—Denuncia Suficiente.—Imputa suficientemente al acusado la intención criminal de privar permanentemente al dueño de la propiedad hurtada, necesaria para que exista el delito de hurto, una denuncia en la cual se alega que el acusado "maliciosa, voluntaria e ilegalmente, y con intención criminal, sustrajo un torito de la propiedad de Manuel Surillo, color hosco, valorado en $75.00, el que vendió al Sr. Elías Coriano, en el Barrio Jácanas, en la suma de $65.00, en cuenta de un negocio de un terreno."

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. L. Pereyó Quiñones,* y en apelación *C. Iriarte, Jr.*

Abogado del apelado: *Sr. José E. Figueras, Fiscal.*

El Juez Asociado Sr. del Toro, emitió la opinión del tribunal.

La denuncia dice que el acusado "maliciosa, voluntaria e ilegalmente, y con intención criminal, sustrajo un torito de la propiedad de Manuel Surillo, color hosco, valorado en $75, el que vendió al Sr. Elías Coriano, en el Barrio Jácanas, en la suma de $65, en cuenta de un negocio de un terreno."

El acusado fué juzgado y condenado primeramente en la Corte Municipal de Yabucoa. Apeló para ante la Corte de Distrito de Humacao y de nuevo fué juzgado y condenado, apelando entonces para ante este tribunal.

1. Sostiene el apelante que la denuncia no es suficiente porque en ella no se imputa al acusado la intención de privar al dueño de la cosa hurtada y cita en apoyo de su contención los casos de *People* v. *Brown,* 105 Cal. 66, y *People* v. *Morino,* 85 Cal. 515.

A nuestro juicio la denuncia es suficiente. Hurto, según el artículo 426 del Código Penal, es el acto de sustraer, con intención criminal, bienes muebles o semovientes, pertenecientes a otra persona.

La denuncia alega expresamente la intención criminal y ello es bastante, pero además la denuncia expresa que el torito de la propiedad de Manuel Surillo que con intención criminal sustrajo el acusado, éste lo vendió a Elías Coriano hecho del cual se deduce la permanencia de su intención criminal al sustraer la propiedad de que se trata.

En el caso de Brown invocado, la Corte Suprema de California se expresó en los siguientes términos:

"Con los anteriores hechos por base la corte instruyó al jurado como sigue: 'No creo sea necesario deciros mucho en este caso. Puedo decir, generalmente, que yo creo que el abogado de la defensa aquí presente en su informe os ha expresado muy justamente los principios de derecho que gobiernan este caso, *salvo en un particular.* Al definir a Vds. el delito de hurto mayor, él dice que es esencial que la propiedad sea tomada criminalmente. Esto es cierto; el tomarla con la intención de privar a su dueño de ella; pero él añade

la conclusión de que tenéis que concluir que el que la tomaba tenía la intención de privarlo de ella *permanentemente*. No creo que la ley sea esa. Yo creo que en este caso, por ejemplo, si el demandado tomó esta bicicleta, digamos .que con el fin de correr en ella veinticinco millas, con el objeto de trasladarse a alguna parte, y entonces la abandonó para que otro la cogiera, y no tenía la intención de hacer otra cosa que trasladarse a cierta distancia, esto constituiría hurto, tanto como si su intención hubiera sido· tomarla para siempre. Un hombre puede tomar un caballo, por ejemplo, no con la intención de apropiárselo absoluta y permanentemente para su propio uso, sino para montarlo hasta cierta distancia, con determinado objeto, y luego abandonarlo. Hasta este punto se lo apropia para sus propios fines y uso criminalmente.'

"Esta instrucción es errónea, y exige una revocación de la sentencia. Si la declaración del muchacho es cierta, él no es culpable de hurto al tomar la máquina, sin embargo, bajo la instrucción de la corte, sus propias palabras lo hacían culpable. La corte dijo al jurado que el hurto puede cometerse aún cuando la intención del acusado fuera sólo el tomar .la propiedad para privar a su dueño de ella *temporalmente*. Creemos que las autoridades forman una cadena ininterrumpida al efecto de que la intención criminal debe ser de privar al dueño de la propiedad *permanentemente*. El ejemplo contenido en las instrucciones de un hombre que toma un caballo es muy amplio por sus términos para basar en él un principio correcto de derecho. Bajo las circunstancias presentadas por el ejemplo, el hombre podría y también podría no ser culpable de hurto. Sería una pura cuestión de hecho para el jurado, que dependería para su verdadera solución de todas las circunstancias que rodearan la transacción. Pero la prueba legal que hay que aplicar a esas circunstancias con el fin de determinar el hecho final sobre la culpabilidad o inocencia del hombre es: ¿Tenía él la intención de privar permanentemente al dueño de su propiedad? Si esa no era su intención, no hay intención criminal, y sus actos sólo constituyen una invasión (*trespass*). Aunque la intención criminal de la parte que toma no ha de ser necesariamente la intención de apropiarse la propiedad para su uso ·personal, sin embargo en todos los casos debe ser la intención de privar a su dueño de la misma, absoluta y permanentemente. Como casos que directa y cumplidamente sostienen este principio, citaremos: *State* v. *Davis,* 38 N. J. L. 176; 20 Am. Rep. 367;

*State* v. *Homes,* 17 *Mo.* 379; 57 Am. Dec. 269, y nota 275; *State* v. *South,* 28 N. J. L. 28; 75 Am. Dec. 250; *State* v. *Ryan,* 12 Nev. 401; 28 Am. Rep. 802; *State* v. *Slingerland,* 19 Nev. 135; Desty's American Criminal Law, Sec. 155 J; *People* v. *Juárez,* 28 Cal. 380.''

*People* v. *Brown,* 105 Cal. 66.

Ruling Case Law, expone la regla así:

''La regla como ha sido expresada generalmente, es que debe haber la intención de privar absoluta y permanentemente al dueño de su propiedad, y que no constituye hurto el tomar una cosa para un fin temporal con la intención *bona fide* de devolverla, o de pagar por ella.''   17 R. C. L. 27-28.

Aplicada la doctrina en este caso concreto no es posible concluir que la denuncia sea insuficiente.   Ya hemos dicho que en ella no solamente se alega la intención criminal del acusado al sustraer la propiedad de otra persona, lo que hubiera sido bastante, sino que de ella consta además de modo positivo, la permanencia de esa intención.

Es conveniente hacer constar que en Puerto Rico existe una ley, la No. 5 de 1912, por virtud de la cual se agregó al artículo 444 del Código Penal, lo que sigue, castigándose así, como un caso especial, el llamado ''hurto de uso''.

''Toda persona que sin la autorización del dueño, o de quien legal o debidamente le represente, tomare intencionalmente un automóvil, bicicleta, bicicleta de motor, coche, calesa, carro, carreta u otro vehículo, o un bote de remos, de vela o de motor u otra embarcación, o un caballo padre, yegua, caballo castrado, potro, vaca, novillo, toro, ternera, mula, burro, borrica u otro animal, con el objeto de usar el mismo temporalmente, será culpable del delito menos grave (*misdemeanor.*)''

Prescindiendo del resumen y estudiando en sí misma nuestra decisión en el caso del *Pueblo* v. *Martínez,* 5 D. P. R. 23 (2ª. Ed.) no es contraria a la doctrina que dejamos expuesta.

2. Alega además el apelante que la corte erró porque la prueba de cargo no sostiene su sentencia.   Parece que es en

relación con este error que se invoca el caso de *Morino, supra.*
En dicho caso—

"El acusado pidió a la corte que instruyera al jurado como sigue:
'Si el jurado cree que el acusado no tenía intención criminal de
hurtar la propiedad en el momento en que la tomó, debe dar un
veredicto de absolución, *aun cuando creyera que él subsiguiente-
mente concibió, la intención de apropiársela.'* La corte dió la pri-
mera cláusula de la instrucción, pero se negó a dar la parte que
aparece en bastardillas. La instrucción era correcta como proposi-
ción abstracta de derecho. (*People* v. *Jersey,* 18 Cal. 337; *People*
v. *Salorce,* 62 Cal. 139; *State* v. *Homes,* 17 Mo. 379; 57 Am. Dec.
269, nota en 273; *Starck* v. *State,* 63 Ind. 285; 30 Am. Rep. 214).
Y la prueba era tal que hacía dicha instrucción aplicable a este caso,
y debió haber sido dada. Si la intención criminal existía al tiempo
que la propiedad fué tomada era una cuestión cuya resolución debió
haber sido dejada al jurado, bajo la instrucción solicitada. La sen-
tencia y orden apeladas son revocadas, con instrucciones a la corte
inferior de que sobresea la acusación a menos que se demuestre una
buena razón para dejar de traer al acusado a juicio." *People* v.
*Morino,* 85 Cal. 517-8.

La regla expuesta tiene algunas excepciones. Véase la
nota al caso de *State* v. *Homes,* reportado en American De-
cisions, 57 Am. Dec. 275.

Ruling Case Law, en relación con la materia, condensa
la jurisprudencia así:

"Aunque parece haber unas cuantas decisiones al efecto de que
si el acto inicial de tomar constituyó una transgresión y fué subsi-
guientemente seguido por una conversión torticera de la cosa tomada,
la intención de hurtar no era necesario que hubiera existido al tiempo
de tomar para que aquel acto constituyera hurto, estando basadas
tales decisiones en la teoría de que el tomar torticeramente no des-
poja al dueño de la posesión y que sin embargo una subsiguiente
conversión por la persona que toma tiene tal efecto, y por tanto
constituirá hurto cuando vaya acompañada de intención criminal, la
regla general es que la intención debe existir al tiempo de tomar,
diciéndose que si el tomar u obtener posesión de la propiedad fué
legal, el delito no queda cometido mediante conversión subsiguiente,
por fraudulenta que ésta sea. Pero la negativa a dar instrucciones

de acuerdo con esta regla se ha resuelto no ser un error perjudicial cuando la prueba justifica una sola inferencia, a saber, que el acusado tenía la intención de apropiarse el objeto del supuesto hurto al tiempo que lo recibió. Es inmaterial en que preciso momento, durante la transacción, tomó forma primeramente la intención criminal de tomar y retener el dinero contra el consentimiento del dueño; cuando quiera que se formara y se pusiera en práctica, *animo furandi,* mediante el acto de llevárselo, desde ese momento el ofensor vino a ser un transgresor, y era culpable de hurto.'' 17 R. C. L. 25-26.

El acusado y el perjudicado, según las pruebas, poseían tierras colindantes, y se admite que indistintamente el ganado que también tenían se pasaba de una finca a otra y viciversa. Pero esto no quiere decir que no esté probada desde su principio la intención criminal. Aunque el torito de Surillo hubiera estado en la finca del acusado porque se hubiera pasado el mismo, cuando el acusado se apoderó de él, si la prueba demostró que tal apoderamiento se llevó a efecto con la intención criminal de privar de él a su dueño vendiéndolo como suyo el acusado, existiría el delito.

La evidencia fué completamente contradictoria. El acusado admitió que vendió el torito que se ocupó en poder de Coriano, pero sostuvo que si así lo hizo fué porque la res era suya, nacida en su propia finca. La prueba de cargo tendió a demostrar que el torito era el mismo que faltó a Surillo, de la propiedad de éste. La corte resolvió el conflicto en contra del acusado y como no se ha demostrado que actuara movida por pasión, prejuicio o parcialidad, o que cometiera manifiesto error, debe su apreciación prevalecer.

Se confirma la sentencia apelada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, Aldrey y Hutchison.