THE STATE v. LACKLAND, *Appellant.*

Division Two, November 20, 1896.

1. **Criminal Law:** LARCENY: FELONIOUS INTENT: INSTRUCTION. An instruction on a trial for larceny purporting to state all the facts necessary to a conviction, is erroneous if it omits the element of defendant's felonious or criminal intent.

2. ———: ———: PRESUMPTION: INSTRUCTION. An instruction on the presumption of guilt arising from the recent possession of stolen property is erroneous unless it is shown by direct evidence that the identical property or some portion of it was found in the exclusive possession of the defendant.

3. ———: CIRCUMSTANTIAL EVIDENCE. Where circumstantial evidence is relied on to prove a fact, the circumstances must be proved, and can not themselves be presumed.

*Appeal from Lafayette Criminal Court.*—HON. JOHN E. RYLAND, Judge.

REVERSED AND REMANDED.

*John S. Blackwell & Son* for appellant.

(1) Instruction number 2 given on part of state is erroneous in that it omits the element of felonious intent. *State v. Campbell*, 108 Mo. 611; *State v. Moore*, 101 Mo. 316; *State v. Witt*, 9 Mo. 392. (2) The evidence was insufficient to authorize the instruction on the presumption arising from recent possession of stolen property. *State v. Crank*, 75 Mo. 406; *State v. Taylor*, 111 Mo. 538; *State v. Scott*, 109 Mo. 226; *State v. Wilks*, 58 Mo. App. 159; *State v. Castor*, 93 Mo. 242; *State v. White*, 126 Mo. 591; 2 Bishop on Crim. Proc., sec. 739, *et seq.* (3) The evidence is insufficient to sustain the verdict.

*R. F. Walker*, attorney general, and *Wm. Aull*, prosecuting attorney, for the state.

(1) Instruction 2, given on part of state properly limits the punishment, and is unobjectionable. R. S., secs. 3536, 3955; *State v. Scholl*, 130 Mo. 399. (2) Instruction 4 on part of state properly declares the law as to recent possession. *State v. Crank*, 75 Mo. 406; *State v. Brown*, 75 Mo. 317; *State v. Castor*, 93 Mo. 242; *State v. Kelley*, 73 Mo. 608; *State v. Scott*, 109 Mo. 226; *State v. Moore*, 101 Mo. 316; *State v. Brown*, 115 Mo. 409; *State v. North*, 95 Mo. 615; *State v. Jennings*, 81 Mo. 185; *State v. Kennedy*, 88 Mo. 341. Defendant had possession of the hogs in controversy a day or so after they were missed from Ford's and retained it up to the time of sale at Odessa. (3) The

evidence in this case shows conclusively that Ford's hogs were taken by defendant, and by him sold, and the money converted to his own use. The identity of the property may always be shown by circumstances. *State v. Kreiger*, 4 Mo. App. 584; *State v. Hutchinson*, 111 Mo. 257; *State v. Warford*, 106 Mo. 55; *State v. Owens*, 79 Mo. 619.

GANTT, P. J.—The defendant was indicted for grand larceny at the March term, 1894, in the Lafayette criminal court. He was tried at the October term of that year and the jury failed to agree. At the March term, 1895, the cause was continued to the October term, 1895, at which term he was again tried and convicted and his imprisonment assessed at two years. He seeks a reversal on various grounds.

In 1893 E. J. Lackland, the father of the defendant, with his wife and two sons, John and Andy, were living on a farm near Greenton, a village in Lafayette county. Cornelius Ford lived on a farm about one half of a mile distant. Sometime in September, seven of Ford's hogs either strayed or were stolen from his premises, but Ford was unable to say in what manner they left his farm and he never saw them afterward. Sometime in the latter part of September, the wife of E. J. Lackland and the mother of defendant discovered six hogs in the corn field of her husband, tearing down the shocks and destroying the corn. Her husband and sons being absent she drove the hogs out of the corn into the barn lot and repaired the fence as best she could. About this time two daughters of C. J. Miller, a near neighbor, passed returning from school. Mrs. Lackland inquired if they knew the hogs and being informed they did not, requested them to ask their father to come and look at them. Mr. Miller did come and look at four of the hogs but was not

able to say to whom they belonged. The defendant and his father returned during the night. Next morning they discovered the hogs had again broken into the corn field. The defendant, his father and mother all testify that the hogs were then turned out of the corn field into the public road that ran by their farm and were never after that on their farm.

Several weeks after this Ford having heard of this incident called at Lackland's and inquired for his hogs when the defendant told him the above facts. On the sixth day of October, 1893, John Lackland took six hogs to Odessa and sold them to Messrs. Rogers and Percy. They were black hogs and averaged 185 pounds each. About a month later Ford came back a second time and accused John Lackland of stealing his hogs and threatened suit for their value. John denied the charge and told him he couldn't sue too quick. Nothing further occurred until this prosecution was commenced about the first of January, 1894.

If the jury had credited the witnesses of the defendant they gave a very satisfactory account of the hogs sold by defendant. It appeared that he had bought and raised hogs and the hogs he sold might well have been his own.

The most damaging evidence against the defendant was that tending to show that he evaded arrest for several days after his father and brother had been arrested for stealing these same hogs, although it was not shown that he knew a warrant was out for his arrest. He was arrested at Dillon's, a brother-in-law of Andy Lackland, about seven or eight miles from his (defendant's) home.

Evidence was introduced *pro* and *con* as to his reputation for honesty; prior to this charge the preponderance of the evidence was that his reputation was good but owing to the fact that the prosecution was urged

by an association of influential citizens organized to prosecute horse thieves, and that they discussed his reputation among themselves and in the neighborhood after this charge was made, his reputation was greatly impaired at the time of the trial.

There was evidence that defendant said he bought these hogs of Easterla near Napoleon and the two Easterlas both deny selling defendant any hogs. On the contrary he denies saying he bought them of Easterla and says that if he made any extravagant claims about fattening the hogs it was simply by way of joke.

I.   It is earnestly insisted that the learned criminal court erred in its instructions to the jury.   Among other instructions the court gave the following:

"If the jury believe from the evidence that the hogs described in the indictment were the property of Cornelius Y. Ford and that they strayed away from his premises and came upon the premises of defendant or where defendant was living, and that defendant thereafter and while they were the property of said Ford, and without his consent, alone or with others, took them to Odessa and sold them and appropriated the proceeds to his own use, and that they were of the value of $30 or more, then defendant is in law guilty of grand larceny even though you should further believe from the evidence that he did not know who the owner thereof was."

It will be observed that no criminal or felonious intent whatever is required by the instruction to constitute the conversion of these hogs grand larceny.   Now the criminal intent at the time of taking the hogs is an indispensable ingredient of the offense.   Certainly this instruction is not supported by any well considered decision. The learned counsel for the state cite *State v. Martin*, 28 Mo. 530.   In that case the cattle were stolen from the range, and the principal ground of defense

relied upon was that the cattle were not in the possession of the owner but the court very properly held that the common law as to lost goods had no application to cattle feeding upon the range. At that time we had no law restraining cattle to the premises of their owner. It was held that the ownership drew along with it the possession.

The instruction given in that case, however, is no precedent for the foregoing instruction. It was in these words: "If the jury believe from the evidence that said Cheatam was the owner and possessed of the cattle mentioned in the indictment and that defendant knowingly took and drove them away, in Benton county, against the consent of said owner, without any claim of right, and with the intent to deprive said owner of them and to convert and appropriate them to his own use, and thereby to defraud said owner of them, they will find him guilty."

In that instruction was the guilty knowledge that the cattle were not his own; the criminal intent to deprive the owner of his property, and the unlawful and fraudulent conversion to his own use without the consent of the owner. None of these elements, save the last, are to be found in the third instruction in this case for the state.

Much more unfortunate is the reliance upon *State v. Casteel*, 53 Mo. 124. In that case it was said: "At common law it was essential in charging this offense to use words 'feloniously' and 'stole', in order to fix the party with a criminal intention. *Without these words a trespass would be charged.* (1 Chitty, Crim. Law, 949.)" 1 Hale, P. C., 504.

In *State v. Ware*, 62 Mo. 597, the cause was reversed because the circuit court refused to instruct the jury that "to find the defendant guilty under the indictment, the jury must believe from the evidence that

the defendant, at the time he caught said mare, took her with the felonious intent to convert her permanently to his use." *State v. Moore*, 101 Mo. 316.

The second instruction, which also omits all reference to the intent at the time the hogs were taken, does not cure this instruction. It often happens that one instruction supplements another, but this can not be said where two instructions are given, each purporting on its face to state all the essentials of a recovery or conviction and one requires proof essentially different from the other. The jury might well have concluded the defendant was not guilty of the felonious taking and conversion but have felt it their duty to find defendant guilty of the acts which went to make up a civil case of trover and conversion. The error is substantial and should be obviated on another trial.

II. The court gave two instructions on the presumption arising from the recent possession of stolen property. This presumption is a most salutary one when the essential facts upon which it rests are shown. It is apparent that the statement of the rule requires proof that the identical property or some portion of it was found in the exclusive possession of the accused. Now in this case Mr. Ford never saw the hogs which defendant sold to Rogers & Percy. No witness identified these hogs or either of them as Ford's hogs. Rogers & Percy did not know Ford's hogs. The case was one of circumstantial evidence and the state's case depended upon the jury's finding and believing that the facts and circumstances in evidence pointed so strongly to defendant's guilt as to exclude any other reasonable hypothesis.

Only by reasoning from other facts was it at all possible to infer the fact that the hogs which defendant sold to Rogers & Percy were the hogs stolen from Mr. Ford. So that when the jury were invited to indulge

the presumption of guilt from the fact of possession they were to base one presumption upon another. This is not admissible. One presumption can not stand as the postulate and the other as an inference therefrom. Says Mr. Starkie, in his work on evidence (10 Am. Ed., p. 80): "In the first place, as the very foundation of indirect proof is the establishment of one or more other facts from which the inference is sought to be made, the law requires that the latter should be established by direct evidence, in the same manner as if they were the very facts in issue."

"Whenever circumstantial evidence is relied upon to prove a fact, the circumstances must be proved, and not themselves presumed." *Douglass v. Mitchell's Ex'r*, 35 Pa. St. 440.

In the case last cited, Judge STRONG, afterward associate justice of the supreme court of the United States, said: "A presumption which the jury is to draw is not a circumstance in proof, and is therefore not itself a legitimate foundation for a presumption. There is no 'open and visible connection' between the fact out of which the first presumption arises, and the fact sought to be established by the dependent presumption." In *United States v. Ross*, 92 U. S. 281, the same learned judge approved and repeated the above citation from Starkie and from the decision of the supreme court of Pennsylvania. *McAleer v. McMurray*, 58 Pa. St. 126. The fact from which the presumption is to be made must have been proved. Wharton on Evidence [3 Ed.], sec. 1226, n. 3; *Yarnell v. Railroad*, 113 Mo. 570. And that is the doctrine of the English courts. In *Rex v. Burdett*, 4 B. and Ald. 161, C. J. ABBOTT said: "A presumption of any fact is, properly, an inference of that fact *from other facts* that are *known*." That presumptions must rest on established facts and not upon

other presumptions, see *Richmond v. Aiken*, 25 Vt. 324; *Pennington's Ex'rs v. Yell*, 11 Ark. 212; *O'Gara v. Eisenlohr*, 38 N. Y. 296; *Phila., etc., R'y Co. v. Henrice*, 92 Pa. St. 431; *Yarnell v. Railroad*, 113 Mo. 570.

It follows that the two instructions on recent possession of stolen property, based as they were upon mere inferences which the jury might or might not draw from the evidence should not have been given. A full instruction, however, in lieu thereof on circumstantial evidence and its probative force should have been given.

The evidence presents a case of the gravest doubt whether there was sufficient evidence upon which to submit it to the jury. As at present advised, we reverse the judgment and remand the cause. SHERWOOD and BURGESS, JJ., concur.

