LEFFLER, Appellant, v. THE ANHEUSER-BUSCH BREWING ASSOCIATION, Respondent.

St Louis Court of Appeals, December 3, 1907.

1. **MASTER AND SERVANT: Safe Place to Work: Negligence.** In an action by a mechanic against his employer for personal injuries received by the plaintiff while installing machinery in his employer's factory, where it was shown that the plaintiff while standing on a ladder several feet from the ground was seized with a sudden dizziness and, to steady himself, placed his foot on some cogwheels which suddenly revolved and inflicted the injury to his foot for which he sued, the evidence is examined and *held*, if the plaintiff's stepping upon the cogwheels did not start them, they started for some unaccountable reason.

2. ———: ———: **Res Ipsa Loquitur.** The doctrine of *res ipsa loquitur* could not apply in such case because the stepping upon the cogwheels was not shown to be within the range of common experience so that no presumption would be indulged that they would *not* turn under the pressure of plaintiff's foot if in good order; the doctrine of *res ipsa loquitur* rests on the theory that an accident happens which according to common experience would not happen unless through some negligence.

3. ———: ———: **Evidence: Cause and Effect.** In such case evidence that the machinery, while in a former location, would sometimes not stop promptly when the belt was thrown for that purpose, was properly excluded, in the absence of any definite proof as to the cause of such failure to *stop*, or any attempt to prove that it sometimes *started* under the same conditions as when it failed to *stop* promptly; such evidence would permit inferences from inferences instead of from facts.

4. ———: ———: **Limits of Master's Duty.** Where a mechanic, while standing upon a ladder in the performance of his duty, installing machinery for his employer, was seized with a sudden dizziness and in order to steady himself stepped upon some elevated cogwheels which started suddenly and injured him, even if the machinery started through negligence of the employer in failing to guard against imperfections in such machinery, the employer was not liable for such injury, because it could not have been anticipated that the employee would have occasion to put his foot on the cogwheels several feet from the floor; a master's duty in furnishing a safe place for his servant to work is limited to such place as the servant may reasonably be expected to go, in the performance of his duty.

Appeal from St. Louis City Circuit Court.—*Hon. Robt. M. Foster,* Judge.

AFFIRMED.

*Walther & Muench* for appellant.

(1) The happening of an event which, in the court of the customary and proper use of an appliance, when in good condition, would not have happened, is of itself evidence of negligence, under the doctrine of *res ipsa loquitur,* and calls for an explanation by the defendant, and the mere fact of the relation of master and servant is not sufficient to render this doctrine inapplicable between them. St. Clair v. Railroad, 122 Mo. App. 529; Lee v. Railroad, 112 Mo. App. 406; Mooney v. Lumber Co., 154 Mass. 407. (2) It was the duty of the defendant to furnish plaintiff a reasonably safe place to work and to see that the appliances he was called upon to use were in a reasonably safe condition and were kept so. Nichols v. Plate Glass Co., 126 Mo. 55; Burnes v. Railroad, 129 Mo. 56; Herdler v. Stove & Range Co., 136 Mo. 3; Bender v. Railroad, 137 Mo. 245; Bowen v. Railroad, 95 Mo. 276; Porter v. Railroad, 71 Mo. 71. (3) Plaintiff, in his employment as a millwright, took only such risks as were apparent, but not those incident to concealed defects. In no event did he assume the risk of the master's negligence. Butz v. Construction Co., 199 Mo. 286, and cases cited; Blundell v. Mfg. Co., 189 Mo. 552; Cole v. Transit Co., 183 Mo. 81; Curtis v. McNair, 173 Mo. 270; Bender v. Ry. Co., 137 Mo. 240; Helfenstein v. Medart, 136 Mo. 595; Nichols v. Plate Glass Co., 126 Mo. 55; Connolly v. Printing Co., 166 Mo. 447; Lore v. Am. Mfg. Co., 160 Mo. 608; Blanton v. Dold Pkg. Co., 109 Mo. 64. (4) The fact that plaintiff placed his foot upon the cogwheels by which it was injured will not bar a recovery if the injury would not have occurred but for the defendant's negligence in allowing the loose pulley to be and remain in a defective condition. Bas-

sett v. St. Joseph, 53 Mo. 290; Hull v. Kansas City, 54 Mo. 598; Brennan v. St. Louis, 92 Mo. 482; Musick v. Packing Co., 58 Mo. App. 322; Nichols v. Plate Glass Co., 126 Mo. 55. (5) Evidence of the defective condition of the slip pulley in another location, a month before the accident, was admissible to show knowledge on the part of the defendant, where it was not shown that the pulley had been changed or repaired in the meantime. Swadley v. Railroad, 118 Mo. 268; Pauck v. Dressed Beef Co., 166 Mo. 639; Gayle v. Car & Fdry. Co., 177 Mo. 427.

*Jones, Jones, Hocker & Davis* and *Geo. S. Grover* for respondent.

(1) Under the pleadings and the evidence in this cause, the plaintiff was not entitled to recover. Richardson v. Mesker, 171 Mo. 666; Smith v. Box Co., 193 Mo. 715. (2) The burden of proof, in this action, to establish the negligence of defendant, was upon the plaintiff, from the beginning to the end of the case. Epperson v. Postal Tel. Cable Co., 155 Mo. 382; Glasscock v. Dry. Goods Co., 106 Mo. App. 664. (3) The evidence offered by plaintiff was clearly inadmissible and was therefore properly excluded. Hipsley v. Railroad, 88 Mo. 354; Sidekum v. Railroad, 93 Mo. 405; Alcorn v. Railroad, 108 Mo. 81; Mahoney v. Railroad, 108 Mo. 200.

GOODE, J.—Appellant received a personal injury while working in respondent's establishment in the city of St. Louis. He had been employed by respondent during the month of May, 1905, in setting up and erecting machinery in different departments of its brewery; but had been in respondent's service for three years. Appellant is a millwright of thirty-five years' experience. Portions of the machinery in respondent's establishment were being moved from one room to another and installed in new quarters. One of the pieces which had been moved was a device or machine used for pressing water out of thin wood, the leaves of wood afterwards being

used to wrap bottles. This machine had been kept in operation previously in another part of the brewery, but about June first, its location was changed and it was while plaintiff was at work installing it in its new quarters that he was injured. The machine was ponderous and consisted of three parts; the legs or supports on which it stood, two heavy iron rollers through which the wood was passed, with cogwheels at the side which geared into each other and turned or rotated the rollers, and the pulleys above on which belting ran to carry power from the main shaft overhead to the wheels and rollers. What is called by the witnesses a "shifting arrangement" was used in connection with the pulleys and belt to transmit the belt from the tight to the loose pulley, or vice versa. When it was desired to move the machinery the belt was kept on the tight pulley and at other times it was shifted on the loose one. At the time of the accident the machine had been put in place and all its parts arranged, except the shifting appliance, on which the appellant was at work when he got hurt. The appliance was overhead and to reach it appellant had ascended a ladder which leaned against a joist. He was six or seven feet up the ladder and in the act of driving a nail, when a dizziness seized him and he attempted to descend. For fear of losing his balance and falling, he rested his left foot on the cogwheels of the machine. Either the pressure of his foot started the wheels into revolution, or else they were turning when appellant stepped on them. His toes were slowly drawn between the cogs before he could stop the machinery, which he did by throwing what he called the "counter belt" off the tight pulley. Said counter belt was shorter than the main belt and ran around a lower shaft, but was occasionally used as well as the main belt, to operate the pressing machine. Four of appellant's toes were so badly mashed they had to be amputated. He testified that the impact of his foot on the cogwheels would not

have been sufficient to move the machine without the application of some force from above by a pulley. He said further that the machine may have been moving at the time he stepped on it, but so slightly or imperceptibly that he could not have seen it without taking special notice. Plaintiff further testified as follows:

"Up to the time of the accident, we had simply tested the machine to find out whether it worked all right. I put a number of layers of wrapping through and it squeezed the water out of them all right. I was to set the machine up and see that it was in running order; that the belt ran properly on the pulleys. I trained the belt to run fairly with the pulley in the presence of Mr. Jenny and Mr. Hardy. They were there to see that the belt tracked properly. I threw the belt from one pulley to the other and saw that it tracked properly on both. I did this before I was hurt. I tried the belt on the pulleys either on the morning of the day I was hurt, or the afternoon before, and I tried the machine on the wrappers, I believe, on the morning of the day on which I was injured. I was injured in the afternoon. The rollers of the machine are set in motion by the power communicated by the belt to the pulleys, through intermediate gearing. I had tried both the fast and the loose pulleys and found that the belt tracked over them properly. I never observed that the loose pulley was out of order until I saw my foot in the cogwheel and then I saw that something was wrong. When I was tracking the belt on the pulleys, both pulleys seemed to work all right; I observed nothing wrong at the time. I had been busy setting up this machine for about three days before the accident. It was my duty to finish the machine so that it could be used. I had finished setting up the machine the day before the accident, and all the forenoon of that day I had been working on the shifting arrangement which is entirely independent of the machine, although used to control it. The machine was moved in three parts. I helped

to take it apart and also helped to put it together again."

He also testified that in setting up the machine the three parts of it were transferred from the room where it previously had been to its new location and put up in the precise condition they were before. Evidence was offered by the appellant to show that when the machine was in its former location, trouble had been experienced in stopping it when the belt was shifted from the tight to the loose pulley, and it had been necessary sometimes to insert a number of thicknesses of wrapping in the machine to keep it from moving after the belt had been shifted. This testimony was excluded by the court and an exception saved to the ruling. The charge of negligence in the petition is as follows:

"And plaintiff further avers that the defendant was then and there negligent and careless in and about the furnishing and the conduct of said machine, in this that the said slip pulley for a long time theretofore had become and been defective and inefficient in this, instead of freely and instantly slipping upon said shaft whenever the belt aforesaid was shifted thereto, the said pulley did frequently, as it did on said 2d day of June, 1905, fail to slip, and continued to revolve said machine and its parts, to the imminent danger of persons and employees rightfully working upon or near the same; and that such defect in said pulley was fully and for a long time theretofore known to the defendant, and was entirely unknown to the plaintiff prior to the happening of said injury; and that notwithstanding such knowledge, defendant failed to remedy such defects, but continued to use said machine in its defective condition, as aforesaid."

At the conclusion of the evidence offered by the appellant, the court, at respondent's request, instructed the jury to return a verdict for it; whereupon appellant took a nonsuit with leave to set it aside and afterwards appealed.

1.  It is the theory of appellant that there was a defect in the nature of a roughness on the inside of the loose pulley, which now and then prevented it from turning smoothly on its shaft and. caused it to clamp the belt, which was intended to run loosely on it and thereby start the machinery and cause appellant's injury. On this theory evidence was offered to prove that for seven months prior to the removal of the machine, there had been trouble in stopping its revolution by throwing the belt on the loose pulley. It is true appellant swore that he and his fellow-workman had tested the operation of the pulleys and the machine in general, after they had been set up in their new location, and that they worked well. But inasmuch as the machinery had been freshly oiled, it is contended it may. have worked smoothly temporarily, and appellant have been prevented from detecting any imperfection in the loose pulley which would cause it to start the machinery at times. Appellant's own testimony shows it was his duty and task to set the machinery up and see that it was in good working order; both the pulleys and the other parts of it; that he did this, and made tests of how it worked and had found nothing wrong, either with the cogwheels, belts or shafting. Just what caused the machinery to start when appellant stepped on the cogs does not positively appear. It may have been that the pressure of his foot started it and that the edge of the belt, which was then on the loose pulley, by rubbing against the side of the tight pulley, kept up the revolution. Appellant swore he realized while his foot was caught that if the edge of the belt was in contact with the tight pulley, sufficient force would be communicated to the belt to continue the revolutions. If we leave out of view the excluded evidence regarding the difficulty of stopping the machinery in its former location, by shifting the belt from the tight to the loose pulley, it is manifest that appellant's evidence had no tendency to

prove negligence on the part of respondent in any respect. As the case appears without said proof, and if appellant's statement is accepted that his weight could not start the machine to revolving, it started to revolve for some unaccountable reason when appellant stepped on it. There is nothing to show that the motion was due to an imperfection in any of the arrangements of which respondent knew, or, in prudence ought to have known; for with the offered testimony excluded, there is none to prove the machinery had worked improperly.

2. The starting of the wheels when appellant stepped on them ought not to be regarded as bespeaking negligence; but that unusual fact should prevent the application of the doctrine of *res ipsa loquitur* even if applicable under proper circumstances in actions by a servant against a master. Said doctrine rests on the theory that an accident had happened which, according to common experience would not happen without negligence. [Dougherty v. Railroad, 9 Mo. App. 478; Scott v. London Dock Co., 3 Hurlst. & Col. *596.] But a man stepping his weight on elevated cogwheels is not shown to be within the range of common experience, and hence no presumption can be indulged that the wheels would not turn under him if they were in good order.

3. Regarding the possibility that the wheels were moving when appellant stepped on them, suffice to say that he did not testify they were, but only that they might have been; and such a bare conjecture cannot be taken as evidence from which negligence might be inferred.

4. But it is insisted the court erred in excluding testimony of the previous action of the machine when the belt was thrown from the tight to the loose pulley. It is not denied that it was appellant's duty to install the different parts of the machine properly, see that they were in good working order in their new location and test their working. But it is argued that if there was some

defect in the loose pulley which occasionally prevented it from working properly, and if appellant had no knowledge of its failure to work well previously, and the defect was concealed or latent, blame is not to be imputed to him for failure to discover the defect; and this may be conceded. As to respondent's blame for such a defect, if any there was, appellant contends that some one ought to have known the defect existed because, in the former location, the loose pulley was occasionally, inefficient. All that was sought to be proved in order to fasten negligence on the respondent in connection with the movement of the machinery when appellant got hurt, was that occasionally in its old location, the machine did not stop revolving promptly when the belt was thrown on the loose pulley. There was no offer to prove that when it was over the loose pulley the machinery sometimes started; as it did when appellant got hurt. But because motion did not always cease at once when the belt was thrown on the loose pulley, it is argued that this fact tends first to prove a certain roughness in the interior of the loose pulley, which caused said pulley not to revolve with uniform smoothness on the shaft, but to tighten sometimes under the belt; presumably in consequence of a protruding part of the inner surface rubbing against the shaft; secondly, to prove the same defect caused the machine to start when appellant was hurt and, thirdly, that respondent was guilty of negligence in not correcting the supposed fault in the loose pulley. It is evident that this argumentation is of a fanciful and speculative character and does not present just inferences from the facts. No witness swore that in its former location the machinery would sometimes not stop running when the belt was on the loose pulley because of a roughness inside the pulley, or that there was a roughness. The failure to stop may have been, as suggested by appellant, caused by the edge of the belt when on the loose pulley rubbing against the side of the tight pulley, or

from some other cause. Neither did any witness testify that the machinery had ever started before from a motionless state because of a defect in the loose pulley, or other defect. Hence we think the fact of an occasional failure of the machinery to stop revolving when the belting was shifted on the loose pulley, during the time the machinery was in its previous location, was no basis for an inference of negligence on the part of respondent in connection with the starting of the machinery in its new location when appellant stepped on the cogwheels. Such a finding would consist of a chain of conjectures, instead of being a valid inference from established facts. Not only are bare conjectures no basis for a verdict, but inferences cannot be multiplied to the extent necessary to support appellant's position, one inference being based on another instead of on facts in proof. [Bigelow v. Railroad, 48 Mo. App. 367, 372; State v. Lackland, 136 Mo. 26, 32, 37 S. W. 812; Click v. Railroad, 57 Mo. App. 97; Chemical Co. v. Lackawana Co., 78 Mo. App. 312.]

5. Appellant's case may be regarded from another point of view. Let it be granted for argument's sake, that there was an imperfection in the machinery which caused it to start, and that respondent was remiss in the matter so as to be liable to a servant injured while operating the machine or performing some other task which naturally would bring him in contact with it. The question occurs whether such negligence can be treated as failure to furnish appellant a safe place to do the work he was about. As appellant stepped on the wheels to save himself from falling, the act was not a negligent one, but we think it throws the casualty into the class of pure accidents for which no one is to blame. It was not of course expected or to be anticipated, that an employee would have occasion to put his foot on cogs which were three or four feet above the floor, and hence that

127 App—32

was not properly speaking any portion of the place furnished him to work in, but a place in which he stepped in consequence of an incident not to be anticipated — his sudden seizure with dizziness. The duty to use care to furnish employees a reasonably safe place to work, cannot be extended so as to require the entire environment to be safeguarded against unforseeable accidents due to a workman going where none was expected to go. We think the duty of a master to protect a servant from injuries in consequence of defects in the master's premises, rests on the same principle as does the rule requiring owners of premises generally to protect persons from injury by keeping the premises in order. The duty does not obtain except in the case of premises and the parts thereof where servants in reason may be expected to be. [Stevens v. Nichols, 155 Mass. 472.] If a servant goes where no one could think he would go, even if some singular exigency compels him to go there, the obligation of the master to furnish a safe place to work, would not embrace such a locality. We are not now speaking of the statutory duty incumbent on employees to guard cogwheels and other machinery; for though negligence in that respect was charged in the petition, it was abandoned at the trial, because the proof showed appellant and his coworkman were preparing to put guards over the cogwheels, but had not done so when the casualty occurred. The cause of action relied on is a defect in the loose pulley, in consequence of which the machinery would continue to revolve after it ought to have stopped.

In our opinion no negligence was proved, or offered to be, against the respondent.

The judgment is affirmed. All concur.