187 So. 252

## CARR v. STATE.
### 4 Div. 396.

Court of Appeals of Alabama.
March 7, 1939.

Sollie & Sollie, of Ozark, for appellant.

Thos. S. Lawson, Atty. Gen., and Noble J. Russell, Asst. Atty. Gen., for the State.

SAMFORD, Judge.

The defendant was indicted jointly with Denton Price, M. C. Hunt, and Spurgeon Mooneyham; each charged with murder in the first degree, for the killing of one Jack Harder.

The defendant, Florence Carr, demanded a severance, and he alone was placed upon

trial, and from the judgment of conviction takes this appeal.

The appellant filed a motion and a plea in abatement seeking to quash the indictment, setting forth four separate grounds. Subsequently, the defendant withdrew ground one, leaving grounds two, three, and four, to which the Solicitor interposed demurrers. These demurrers were sustained, and this action of the court is assigned as error.

The principal insistence of defendant, as set out in his plea in abatement, is that the Presiding Judge in his charge to the Grand Jury placed undue emphasis upon the conditions existing in that part of the County of Barbour where this crime is alleged to have been committed.

■ In charging a Grand Jury a very large discretion must be left to the trial judge, and it is within his prerogative to call attention to any unusual state, or condition, affecting the general welfare in the County, where the Grand Jury is charged with the investigation of all violations of the criminal law.

■ The Grand Jury is the inquisitorial body of the County, drawn and summoned from among its best citizens who, under the direction of the Presiding Judge, must make investigations of all violations of law, making presentments in accordance with such investigation to the court.

■ A very large discretion is conferred upon the Presiding Judge in respect to these things, and no appellate court will undertake to control it, unless such instructions refer directly to the crime being charged in the indictment and then on trial. Blau v. State, 82 Miss. 514, 34 So. 153.

The record in this case comprises 288 pages, consisting of many objections and exceptions to testimony, some of which are without merit, and some of which constitute error. The trial judge recognized erroneous rulings in a part of the testimony with regard to the character of the defendant, as appears in the record at the close of the testimony, where he says: "there is a part of the testimony with regard to the character of the defendant now that ought to be excluded * * * I'll give the jury the proper instructions." As to this evidence, it does not appear that it was ever specifically excluded by the trial judge. If it were necessary to a proper decision in this case, we would point out, in detail, the numerous errors incident to this testimony; and also, we would hold that it was injurious to the defendant's cause. However, as we view the evidence in this case, it will not be necessary to pass upon the numerous objections and exceptions to testimony taken on the trial.

The evidence in this case is very voluminous. Indeed, we may observe that it is unnecessarily so; furnishing details, long examinations, and cross-examinations, involving matters not at all in dispute.

Jack Harder, a young man about nineteen years of age, was found dead about sun-up on the morning of March 12, 1936, at a point about three-quarters of a mile south of the Bee Line Highway, on a narrow road leading from the main road near a negro church, and in Dale County, Alabama. His yellow Chevrolet Roadster automobile was standing near the body of deceased, with its lights on, door open, and with what appeared to be a bullet hole in the wind-shield in front of the steering wheel, and a mark or dent in the frame surrounding the glass in the back curtain.

The testimony as to the finding of the body, and the autopsy, was given in its minutest detail. All of which tended to prove that the young man, Jack Harder, had been killed; and that he did not die by his own hand.

Abruptly leaving the scene where the body of Harder was found, the State transferred its investigations to the home of this defendant in Barbour County, Alabama, near Elamville; about twelve miles from the place where the body was found. This testimony tended to show that at sometime between one o'clock and five o'clock in the morning on the 12th day of March, 1936, Harder had been at the house of this defendant engaged in a game of poker, and that he had been killed at, or near, the defendant's house; placed in the rumble seat of his automobile and driven to the point in Dale County, Alabama, where the body was found, and there left.

The insistence of the State depends upon the testimony of two witnesses, the principal one being a man by the name of Marvin Teal, and the other one a man by the name of M. D. Johnston.

Marvin Teal, by the unreasonableness of his story, the impeachment of his character by numerous witnesses living in his

community, and by contradictory statements made to others, and the further proof by witnesses that he could not have been where he said he was on the occasion testified to by him, is shown to have been unworthy of belief. If these witnesses are to be believed, Marvin Teal is not only a man of bad character, but is truly untrustworthy.

The witness Johnston was also impeached by testimony tending to show that he could not have been at the place where he said he was on the occasion testified to by him; and, also, that he had been in communication with Teal, who seemed to have been very much interested in this prosecution, and there was some evidence tending to prove that this interest was pecuniary.

The State did introduce some testimony tending to prove the good character of these two witnesses, which made the question of impeachment one of fact for the jury. However, after a careful reading of this evidence, and assuming that the testimony of these two witnesses is true, the State has failed to offer any direct evidence which would authorize a jury to connect this defendant with the homicide of Jack Harder at the home of this defendant in Barbour County, Alabama, either as a principal or as an accessory before the fact.

■ In order to warrant a conviction on circumstantial evidence it is necessary to prove each circumstantial fact beyond a reasonable doubt; circumstantial evidence from which an inference of their existence may be drawn by the jury is not sufficient; one presumption of fact cannot be based upon another. Vernon v. United States, 8 Cir., 146 F. 121; State v. Lackland, 136 Mo. 26, 37 S.W. 812.

■ "Where circumstantial evidence consists of a number of connected and interdependent facts and circumstances, it is like a chain which is no stronger than its weakest link; if any link is missing or broken the continuity of the chain is destroyed and its strength wholly fails." 16 C.J. 765 (1569) d.

■ The evidence in this case is entirely circumstantial; where this is the case, and fairly permits an inference consistent with defendant's innocence, it will not support a conviction. Way v. State, 155 Ala. 52, 46 So. 273.

■ The general rule applicable to this class of cases is thus stated: "The test of the sufficiency of circumstantial evidence is, not whether it produces as full conviction as the positive testimony of a single credible witness, but whether it excludes from the minds of the jury every reasonable doubt of the defendant's guilt." Matthews v. State, 55 Ala. 65, 28 Am.Rep. 698; Mickle v. State, 27 Ala. 20; Faulk v. State, 52 Ala. 415.

■ But for the testimony of the State's witnesses, Teal and Johnston, to the effect that defendant was seen taking the body of Jack Harder away from defendant's house after Jack Harder had been killed, there is no single fact or circumstance, testified to by any of the witnesses, tending to connect this defendant with the actual killing of Jack Harder; and this fact only furnishes an inference of guilt to be drawn from the fact as testified to, that the defendant was making an effort to obliterate evidence of a crime already committed. Montgomery v. State, 17 Ala.App. 469, 86 So. 132.

■ In passing upon the law applicable to convictions on circumstantial evidence, Mr. Justice Stone, in the case of Ex parte Acree, 63 Ala. 234, and speaking for the Court, composed of Brickell, Chief Justice, and Manning and Stone, Associate Justices, had this to say: "The humane provisions of the law are, that a prisoner, charged with a felony, should not be convicted on circumstantial evidence, unless it shows by a full measure of proof that the defendant is guilty. Such proof is always insufficient, unless it excludes, to a moral certainty, every other reasonable hypothesis, but that of the guilt of the accused. No matter how strong the circumstances, if they can be reconciled with the theory that some other person may have done the act, then the defendant is not shown to be guilty, by that full measure of proof which the law requires."

Since the decision in the Acree case, supra, the appellate courts of this State have adhered to that humane ruling; and this Court in the case of Tatum v. State, 20 Ala.App. 24, 100 So. 569, was at some pains to point out the distinction between direct and circumstantial evidence; in which opinion we cited and quoted from 1st Greenleaf on Evidence, p. 13; Wigmore's Evidence, p. 43; Wills, Criminal

Evidence, p. 46; and, in addition thereto, Black's Law Dictionary and Hale, P.C., p. 290, and a large number of decisions and opinions from the appellate courts of this State.

The verdict in this case must of necessity have rested upon the facts and circumstances as testified to by the witnesses Teal and Johnston. The testimony of these two witnesses upon salient facts was at variance. The truth of their testimony was overwhelmingly contradicted by many witnesses. The general character of these witnesses as testified to by a large number of people in the community, who had known them for years, showed them to have the reputation of being shiftless, intemperate, untrustworthy and generally bad citizens.

There was some testimony tending to prove that the witness Teal had been within a few miles of the place where the dead body of Jack Harder was found, early on the morning of March 12, 1936.

The testimony of Johnston, in its unreasonableness, fails to carry conviction; and, in addition to this, there was much testimony tending to impeach Johnston, both as to his general bad character and the testimony given by him.

On the part of the defendant, there were a number of unimpeached witnesses testifying to a state of facts which rendered the commission of the alleged crime by the defendant impossible; and, in addition, a very large number of unimpeached witnesses testified unequivocally to the defendant's good character and high standing in the community where he lived.

Viewing and considering this entire record, we are clear to the conclusion that the State has not met the burden of proof necessary to a conviction; and to permit this verdict to stand would be wrong and unjust.

Reserving all rulings on objections and exceptions, not hereinabove set out, and basing our conclusions on the overwhelming weight of the testimony, we hold that the court erred in refusing to grant defendant's motion for a new trial; and, for this error, the judgment is reversed and the cause is remanded.

Reversed and remanded.