STATE OF CONNECTICUT *v.* ALFRED ATKINS

SUPERIOR COURT     FAIRFIELD COUNTY     FILE No. 16282
AT BRIDGEPORT

Memorandum filed February 2, 1966

*Otto J. Saur,* state's attorney, for the state.

*Weinstein & Weinstein,* of Norwalk, for the defendant.

MacDonald, J. On September 21, 1965, a grand jury returned a true bill indictment against this defendant, charging him with the crime of second-degree murder. Thereafter, the defendant filed a motion to dismiss on the ground of invalidity of arrest and for lack of jurisdiction, claiming miscellaneous irregularities which were discussed in a memorandum denying the motion, filed herein January 4, 1966. *State* v. *Atkins,* 26 Conn. Sup. 207. As therein pointed out, most of the claimed irregularities were waived when counsel, on September 21, 1965, filed a general appearance submitting to the jurisdiction of this court.

Counsel now has filed a combined plea in abatement and motion to quash indictment in which he reiterates these same irregularities, concluding with the claim that since the original incarceration was unlawful, the subsequent proceedings before the grand jury were invalid, void and unconstitutional.

These claims warrant no further comment and are covered by the prior determination that the arrest was clearly upon speedy information and probable cause and also by the later filing of a general appearance.

In the present plea and motion, however, something new has been added in the paragraphs claiming improper selection of the grand jury and improper instruction to the grand jury, resulting in the contention that the indictment "by a Grand Jury thus selected and instructed violated defendant's rights" under the fourteenth amendment to the United States constitution and article first, §§ 8 and 10, of the Connecticut constitution. Taking these claims in order, the motion states: "Members of the Grand Jury were selected without standard or criteria to govern said selection, except that the Grand Jurors be electors in the County of Fairfield." That is the only standard or criterion required by § 54-45 of the General Statutes, and the statute was fully complied with by the court and its officers in summoning the grand jury in the absence of a showing that any of the members were disqualified for any reason. *State* v. *Davies*, 146 Conn. 137, 140; *State* v. *Hamlin*, 47 Conn. 95, 106. However, the claim is specifically made, as it was not made in the *Davies* case, that "there was a failure to obtain an impartial jury drawn from a cross-section of the community," and "a systematic and intentional exclusion of certain electors of the county."

At a full hearing on January 21, 1966, the defendant produced evidence in support of his contention, including the testimony of the high sheriff of Fairfield County and of six members of the grand jury and also, as exhibits, the applications and orders summoning all four grand juries which have been

called in Fairfield County since June 1, 1963, when the present high sheriff took office, including the one summoned in this case. It appears from an examination of these exhibits that many of the same individuals have served on all four grand juries, and it appears from the sheriff's testimony that the list from which they were drawn includes many individuals who were known to him as personal friends or "friends of friends" as well as many left over from the similar list of his predecessor in the office of high sheriff, who, incidentally, was of a different political faith. Defendant's counsel makes much of these circumstances as being indications of "systematic and intentional exclusion of certain electors of the county."

Since the lists of grand jurors and the sheriff's master list from which they were drawn include members of the Jewish, Catholic and Protestant faiths, Negroes as well as whites, and persons of many racial extractions and of both major political parties, it is difficult to see how this claim can be supported. Moreover, it appears that the grand jury in this specific case included electors from eight different towns within Fairfield County. In reply to counsel's objection to the inclusion of eight members from Bridgeport, attention is called to *Akins* v. *Texas,* 325 U.S. 398, 403, in which the United States Supreme Court points out that fairness in selection has never been held to require proportional representation. In *Smith* v. *Texas,* 311 U.S. 128, 130, the Supreme Court does state: "It is part of the established tradition in the use of juries as instruments of public justice that the jury be a body duly representative of the community." The evidence indicates that this tradition has not been violated here despite defendant's apparent claim that persons unacquainted with the sheriff or his associates are excluded from jury duty.

Many of the defendant's objections might well apply to the selection of a petit jury drawn to determine the guilt or innocence of an accused, but a grand jury is an informing and accusing body rather than a trial body, and its duty is to inquire and investigate, not to determine the guilt or innocence of persons accused of crime. See *United States ex rel. McCann* v. *Adams,* 3 F.R.D. 396, 406; *United States* v. *Atlantic Commission Co.,* 45 F. Sup. 187, 192; and many other authorities cited in 18A Words & Phrases 360–364. A grand jury has been defined as an inquisitorial body of the county drawn and summoned from among its "best citizens" to investigate violations of law under the presiding judge's direction. *Carr* v. *State,* 28 Ala. App. 466, 467. And it has been frequently termed a constituent or component part of the machinery of the court. See cases cited in 18A Words & Phrases 362. Defendant's same objections could be made with equally unconvincing force to the selection or appointment of other authorities having the power to find "probable cause," such as United States commissioners appointed by United States district judges, lower court judges appointed by governors, or trial justices appointed by town selectmen.

Defendant's counsel, in his supplemental brief, states that the high sheriff "in testimony before this Court, has utterly failed to show the use of any reasonable mechanism to effect this result," i.e., a fair, nondiscriminating cross-section of the community. It was not the state's burden to prove the method of selection fair and nondiscriminating, but rather the burden of the defendant to prove his claim that there was "a systematic and intentional exclusion of certain electors of the county." Statements by the sheriff that he has chosen grand jurors in an informal manner from friends and political acquaintances or from those of his predecessor in

office and that there were "no strangers" in the lists do not suffice to sustain this burden, nor does his admission that "If I think . . . [a person] was a good juror, I put him on again."

Defendant's plea and motion recites that the indictment "was returned without the Grand Jury having been instructed to find . . . that defendant was of sound mind and judgment." An examination of the court's charge readily disproves this claim, since it defines murder and manslaughter as the unlawful killing of another "by a person of sound reason and judgment," with or without malice, respectively, and, at a later point, points out again that "the person doing the killing must have been of sound mind at the time of the killing." The charge then contains the following explanation: "The second element, the soundness of mind of the accused at the time of the killing, ought to cause you no trouble. From the fact that most people are of sound mind, the law presumes all persons are of sound mind until evidence to the contrary is produced. In a sense, therefore, if any accused person is going to claim he was of unsound mind at the time of the killing it is a matter for him to produce sufficient evidence that will put insanity in issue. Accordingly, you will not have before you any evidence tending to prove insanity unless it should happen that some of the evidence that goes to make up the State's case would in and of itself indicate unsoundness of mind. Even though that should happen, you would hardly be justified in refusing to indict on that ground alone because you are concerned only with the question as to whether there is probable cause to hold the accused for trial, and, accordingly, the presumption of sanity is an adequate basis on which to find such probable cause as far as the element of soundness of mind is concerned." This was an entirely adequate and accu-

rate charge on the question of sound mind and judgment.

It is certainly true, as stated in defendant's supplemental brief, that the United States Supreme Court has recognized increasingly the vital role of representation by counsel, but it has not yet gone so far as to prescribe representation by counsel before a grand jury, and it is very difficult to follow the line of reasoning behind the claim that "denying criminal suspects the assistance of counsel during their appearance before grand juries effectively discriminates in favor of wealthier and therefore better educated persons."

The defendant's basic rights were in no way violated by the grand jury proceedings in this case. Accordingly, his plea in abatement is overruled and his motion to quash is denied.