# THE STATE v. CLAUDE RADER, Appellant.

### Division Two, November 24, 1914.

1. **LARCENY: Instruction: No Felonious Intent: Steal.** An instruction setting forth the elements of larceny, which omits the words "with a felonious intent," or words of equivalent meaning, is erroneous. At common law a felonious intent was a constituent element of larceny, and by statute the common law is in force in this State and is the only rule of decision until it has been abrogated or changed by statute, and for at least ninety years the statute concerning larceny has contained the words "feloniously steal, take and carry away," etc.

2. **————: ————: ————: Words of Equivalent Meaning: Steal.** Larceny is an exception to the general rule, which is that the words "felonious" and "feloniously" need not be used in an instruction, and if used they need not be defined. An instruction for grand larceny ought to require the trial jury to find that the taking was with a felonious intent, but the specific use of the word "felonious" or "feloniously" is not absolutely necessary. Words of equivalent meaning may be used in stead; but the word "steal" is not an equivalent. *Held*, by WALKER, J., that where the instruction contains the words "unlawfully steal, take and carry away" the words "with felonious intent" are not only not necessary, but their use would be both redundant and tautological.

3. **————: ————: ————: Accessory.** Defendant, while confined in calaboose for a misdemeanor, hired Bell to feed and attend to his horses kept in a barn. The feed running short, defendant directed Bell to go to a neighbor's barn and get corn and alfalfa. Bell did so, committing grand larceny, and concealed the articles in defendant's barn. Bell at first denied that defendant was connected with the larceny, but later confessed, and testified he stole the corn and alfalfa at defendant's direction and procurement; defendant testified that he directed Bell to buy the feed, not to steal it. The case is close upon its facts. *Held*, that defendant was entitled to a specific instruction requiring the jury to find that defendant, in the alleged procurement of said Bell to commit the larceny charged, acted with a felonious intent. An accessory before the fact must in all cases act with a criminal intent, and where the crime charged is grand larceny he must have acted with a felonious intent.

4. **INSTRUCTIONS: Assumption of Larceny: Accessory.** Where defendant is being tried as an accessory to a grand larceny

committed by Bell, and Bell swears he did steal the things charged, and defendant does not deny or controvert the theft, but denies his guilty connection therewith, it is not error for the State's instructions to assume that Bell stole the things.

Appeal from Boone Circuit Court.—*Hon. David H. Harris*, Judge.

REVERSED AND REMANDED.

*N. T. Gentry* for appellant.

(1) The State's instruction number 1 is erroneous, because: (a) It omits the all important part of the definition of larceny, to-wit the words "with a felonious intent." In case where the defendant was tried for stealing a steer, these words were termed "the chief ingredient of grand larceny," and a conviction was set aside on account of the failure to use said words in the State's instruction. State v. Weatherman, 202 Mo. 9. In another larceny case, it was said that "the felonious intent is the material ingredient of the offense." State v. Gray, 37 Mo. 463. In speaking of an instruction which omitted the felonious taking of the money alleged to have been stolen, and in reversing the case, this court said "Attention to the numerous adjudications of our own courts would prevent errors like this." State v. Rutherford, 152 Mo. 132; State v. Richmond, 228 Mo. 366; State v. Casey, 207 Mo. 11; 2 Bishop's New Crim. Law, sec. 811; State v. Moore, 101 Mo. 328; State v. Storts, 138 Mo. 137; State v. Waghatter, 177 Mo. 689; State v. Gresser, 19 Mo. 247; State v. Campbell, 108 Mo. 614. This has been the settled law of Missouri for seventy years past, ever since Judge Scott said, "To constitute this offense, therefore, in any form, there must be a taking from the possession, a carrying away against the will of the owner, and a felonious intent to convert it to the offender's use." Witt v. State, 9 Mo. 671; 3 Chitty,

675. It must also be remembered that our statute, in defining this crime, uses the words, ''feloniously stealing, taking and carrying away.'' R. S. 1909, sec. 4535; 18 Am. & Eng. Ency. Law, 500, 502; Moore v. State, 166 S. W. (Tex. Cr. App.) 1153; 8 Ency. Ev. 122; State v. Zehnder, 228 Mo. 327; State v. Littrell, 170 Mo. 13; State v. Waller, 174 Mo. 518. (b) For the further reason that there was no evidence sufficient to justify the giving of an instruction on the subject of grand larceny. There was no evidence of the contents of the sacks that were taken by the witness Bell, neither was there any evidence of the value of the contents: and without the oats and ground alfalfa, the property was of a value less than thirty dollars. When there is no evidence of the value of the article alleged to have been stolen, it is error to instruct on the subject of grand larceny. R. S. 1909, sec. 4535; State v. Murphy, 141 Mo. 270; State v. Norman, 101 Mo. 524. (2) State's instruction number 2 is erroneous as it assumes that Bell did take the property of W. L. Green. An instruction in a criminal case should not assume a fact that it is necessary for the State to prove. State v. Ferguson, 221 Mo. 529; State v. Drew, 179 Mo. 324; State v. Bonner, 178 Mo. 432; State v. Marsh, 171 Mo. 529; State v. Hecox, 83 Mo. 538; State v. Dillihunty, 18 Mo. 331; State v. Wheeler, 79 Mo. 366; State v. Evans, 158 Mo. 606; State v. Bobbitt, 215 Mo. 43; State v. Vickers, 209 Mo. 33; State v. Langley, 248 Mo. 554. Instruction 2 is also erroneous in that it says ''prior to the wrongful taking of the property of W. L. Green.'' It should have said ''prior to the felonious taking, stealing and carrying away of the property of W. L. Green.'' The property might have been taken wrongfully by Bell, and yet not stolen, as defined by our criminal code. Authorities supra. ''To prove the offense of the principal, it is necessary to establish not only his criminal acts that go to make up the felony, but also the criminal intention on his

part." 1 Ency. Evid. 73; People v. Collins, 53 Cal.
185; Walker v. State, 118 Ga. 758; State v. McKean,
36 Iowa, 343. Said instruction is further erroneous
in that it says, that the jury must find that the de-
fendant "counseled and advised with said Bell," and
that he "solicited him to take the same." Even if Bell
did take the property with a felonious intent, it was
necessary for the State to prove, and for the jury to
find, that the defendant feloniously aided, counseled
and solicited him to do the taking. This important
factor (the criminal intent) is entirely omitted from
this instruction. State v. Branch, 237 Mo. 252. All
of our authorities hold that a defendant, in order to be
held liable for the acts of the accomplice, must have
had the "felonious intent." State v. Shour, 196 Mo.
219; State v. Dalton, 27 Mo. 16; Wharton's Crim. Ev.
(8 Ed.), sec. 440; State v. Kuhlman, 152 Mo. 103;
State v. Umble, 115 Mo. 461; State v. Hollenscheit, 61
Mo. 308; State v. Stacy, 103 Mo. 13; R. S. 1909, sec.
4898; State v. Hayes, 105 Mo. 84; State v. Hang Tong,
115 Mo. 389; State v. Douglass, 44 Kan. 625. And
finally, instruction 2 is erroneous because it assumes
that defendant intended for Bell to take Mr. Green's
property. The jury should have been required to find
that, by the words, "If you will go out there, I am sat-
isfied you can get some feed out there," the defendant
intended for the witness Bell to feloniously steal said
feed. The court should not have assumed, as it did
by this instruction, that those words were either coun-
sel, advice, encouragement or command to Bell to com-
mit larceny. 1 Ency. Evid. 78; Hicks v. United States,
150 U. S. 449; State v. Hickam, 95 Mo. 322. (3) The
trial court erred in not giving an instruction on the
subject of petit larceny. The State's evidence showed
that the witness Bell took some alfalfa, corn, oats, etc.,
and the witness Crump testified that, in his opinion,
that amount of feed was worth $33.30. But it must be
remembered that he did not know the quantity of oats

in the eight sacks, and no other witness testified to the quantity. As there was no proof as to the amount contained in the eight sacks of oats, and as this is a criminal prosecution in which nothing can be taken by inference, the oats should be eliminated in the total valuation. State v. Gabriel, 88 Mo. 643; 1 Greenl. on Evidence (14 Ed.), sec. 6a; State v. Narzinger, 220 Mo. 53; State v. Lingle, 128 Mo. 540; State v. Ruck, 194 Mo. 430; Hamilton v. People, 113 Ill. 38; State v. Shields, 110 N. C. 497; R. S. 1909, sec. 4549; State v. Norman, 101 Mo. 524; State v. Sharp, 106 Mo. 109; State v. Murphy, 141 Mo. 270; 8 Ency. of Evid. 140; Dubois v. State, 20 Fla. 841; State v. Wood, 46 Iowa, 116; Brooks v. State, 28 Neb. 389; People v. Kehoe, 19 N. Y. Supp. 763. It is the duty of the trial court to instruct on all questions of law arising in the case, whether asked to do so or not. R. S. 1909, sec. 5231; State v. Nicholas, 222 Mo. 434.

*John T. Barker,* Attorney-General, and *Thomas J. Higgs,* Assistant Attorney-General, for the State.

(1) It is not necessary that an instruction be as broad as the charge in an indictment or information, and it is not essential that it contained the word "feloniously." The term "feloniously" is one of classification only and is therefore essential as a rule in the information, in order that the offense may be classified, but is not essential in the instruction. State v. Helton, 234 Mo. 557; State v. Richmond, 228 Mo. 362; State v. Cummings, 206 Mo. 613; State v. Rowland, 174 Mo. 373; State v. Woodward, 131 Mo. 369; State v. Barton, 142 Mo. 450; State v. Miller, 159 Mo. 113. It is not essential that an instruction on grand larceny should contain the words "without the consent of the owner." State v. Richmond, 228 Mo. 365; State v. Waller, 174 Mo. 518. It is not essential that an instruction on grand larceny contain the words "with the

felonious intent to convert the same to his own use."
The words "stolen" and "steal" charge a defendant,
in a larceny charge, with the essential criminal intent,
and mean a taking away "knowingly without any claim
or pretense of right" and "with intent wholly to de-
prive the owner of the goods," or "to convert them
to the use of the taker." Kelley's Criminal Law and
Procedure (3 Ed.), sec. 651; Kelley v. State, 14 Ind.
36. Webster defines the word "steal" as "To take and
and carry away feloniously; take clandestinely without
right or lief, as the personal goods of another." This
is the common acceptation of the word "steal," and
the ordinary layman when he hears that one "did
steal" is impressed with the idea that the property of
another has been taken and carried away without right
or leave with the intent to convert the same. State v.
Fitzpatrick, 32 Atl. (Del.) 1072; 2 Abbott's L. Dict.,
p. 503; Anderson's L. Dict., p. 973; Black's L. Dict.
(2 Ed.), p. 1109; 3 Strande's Judicial Dict., p. 9134; In
re Gannett, 39 Pac. 496; Alexander v. State, 12 Tex.
540; People v. Tomlinson, 508 Cal. 19; State v. Dewitt,
142 Mo. 76. To steal in many jurisdictions has been
defined to mean "to take and carry away feloniously"
and "take without right or leave and with intent to
keep wrongfully." Baldwin v. State, 46 Fla. 115; State
v. Dewitt, 152 Mo. 85; People v. Lammerts, 164 N. Y.
137; Hughes v. Terr., 8 Okla. 28, 31; State v. Smith,
31 Wash. 245; State v. Richmond, 228 Mo. 362. (2)
The court did not commit error in refusing appellant's
requested instruction number 2. This instruction de-
fines an accomplice, and states that an accomplice is
equally guilty with a party committing the theft. Sec.
4898, R. S. 1909; State v. Tobie, 141 Mo. 556.

FARIS, J.—From a conviction in the circuit court
of Boone county of the crime of grand larceny and a
sentence therefor to imprisonment in the penitentiary

for a term of two years, defendant, pursuant to the usual procedure, has appealed.

The facts presented by this record and upon which this conviction is sought to be sustained, are unique. The defendant at the time of the commission of the larceny alleged was, and for some days prior thereto had been confined, in the calaboose of the town of Centralia upon the charge that he had illegally sold intoxicating liquor; so that his alibi was perfect, so far as concerns his actual presence at or participation in the alleged larceny. The indictment charged that the property stolen was feed and that it consisted of eight sacks of oats, ten sacks of alfalfa meal, ten bales of alfalfa hay, two bushels of corn and one bale of straw. The actual larceny of this property was accomplished by one William W. Bell, who was the principal witness for the State, and, in fact, the only witness who gave any testimony in any way connecting defendant with this theft.

According to the testimony of said Bell he had been employed by defendant to feed and care for a number of horses owned by defendant during the enforced absence arising from the imprisonment of the latter. Defendant's horses, some seven in number, together with one of Bell's horses, were in a barn at Centralia, which barn had been rented by and was in defendant's possession. After Bell had been in charge of defendant's barn and horses for some two or three days the feed for this stock ran short; thereupon Bell says he went to the calaboose to confer with defendant about the situation, and informed defendant that the feed was almost gone. Bell further says that defendant asked him if he knew where any feed could be obtained, and that he (Bell) replied that he did not. Thereupon, says Bell, the below quoted conversation ensued between him and defendant. Defendant asked Bell: "'Do you know where this big barn is out here west of town of Mr. Lee Green's?' I said, 'I do not.' He said:

'Don't you know where that barn is out there?' I said,
'No.' He said, 'Maybe you know it by the John Rut-
land's barn?' I said, 'Yes, I know where that is,' and
he said, 'I saw Mr. Green hauling some alfalfa out
there in the summer time.' He said: 'If you will go
out there I am satisfied you can get some feed out
there. If there is any out there, get it and bring it in
and I will pay you for it and I will allow you on what
you owe me'—on a mare I bought. He said if I didn't
want to take the wagon and team out there first I could
go and ride the pony out and find it. He said I might
work a big brown horse with a big foot and an old sor-
rel horse with a bald face. I said all right if I could
find collars. I could not find a collar for the sorrel
horse. I worked my grey horse and his brown horse
after this feed.''

Following the substance of the testimony of the
witness Bell, but without further quoting his exact lan-
guage, he said that he left the defendant's barn in
Centralia between twelve and one o'clock, went out
into the country near the edge of town to the barn of
one W. L. Green and there stole eight sacks of oats,
ten bales (*sic*) of alfalfa meal, ten bales of alfalfa hay,
two bushels of corn and one bale of straw; that he
loaded this feed on a one-horse wagon and drove the
same into the defendant's barn (except for the loss of
a portion thereof, which slipped from the wagon on
the way), there unloaded it and placed it in the hall-
way of said barn, and that near defendant's barn he
broke the double-tree of his wagon. Bell further says
that in the morning between five and six o'clock he
went to the calaboose and again saw the defendant, told
him fully what he had done, and that instructions were
given him by the latter to unload and store the stolen
feed and cover it with a tarpaulin and to lock the doors
of the barn, and to fasten the windows with wire; all
of which Bell did.

The witness Bell, confessedly the actual thief, was arrested for the larceny in question at about nine o'clock on the morning following the theft. At first and for some several days, Bell, while admitting his own guilt, denied that defendant was in anywise connected with this larceny. Subsequently, and after a few days, he changed his story and said, as he did upon trial in his sworn testimony, that defendant had been the active mover in procuring his commission of this larceny.

The defendant testifying for himself, while admitting that Bell had called on him at the calaboose at about 5:30 o'clock in the morning following the larceny and had then confessed to him the manner in which he had obtained the feed, yet contended that the larceny was without his prior knowledge, procuration or consent, but that on the contrary he had given Bell the money with which to purchase feed and expected him to buy feed and not steal it. Defendant also testified that Bell was stealing this feed for himself, and intended to haul it to a barn out in the country where Bell had some horses of his own, but that he had broken a double-tree while in the neighborhood of defendant's barn, which misfortune made necessary the unloading of the feed therein and thus explained the presence of the feed in this barn.

The bad reputation of appellant for morality and truth and veracity was shown by the State. The State was also permitted to show that the constable and various other persons "suspicioned" from the beginning defendant's connection with this larceny. Since, however, no objection was made to this outrageous sort of evidence the point is not before us for review.

The actual confessed thief, Bell, was likewise indicted for this larceny and entered a plea of guilty thereto and was by the court paroled.

The above is deemed a sufficient statement of the facts as will serve to make clear the points discussed

in the opinion here. These points will be further illuminated by such statement of facts as may become necessary in the opinion.

## OPINION.

I.   Instruction numbered one, which defendant very insistently urges as erroneous, is as follows:

"The court instructs the jury that if you find and believe from the evidence, beyond a reasonable doubt, that at the county of Boone and State of Missouri, on or about the 24th day of November, 1913, one William Bell did unlawfully steal, take and carry away the goods and chattels of W. L. Green as charged in the first count of the information in this case, and if the jury further find from the evidence that the defendant prior to the stealing, taking and carrying away of the said goods and chattels advised, procured, encouraged, counseled or commanded the said William Bell to steal, take and carry away the goods and chattels as aforesaid, and that said goods were of the value of thirty dollars or more, then you will find the defendant guilty under the first count of the information and assess his punishment at imprisonment in the penitentiary for a term not less than two years nor more than five years."

*Larceny: Instruction: Words "With Felonious Intent" Necessary.*

The gravamen of defendant's objection to the above instruction is (to express it in counsel's own language) that "it omits the all important part of the definition of larceny, to-wit, the words, 'with a felonious intent.' "

The State contends on the other hand most insistently that the use of the word "steal" comports a wrongful and fraudulent taking together with the felonious intent to convert the property in question to the use of the taker and to deprive the owner thereof permanently without his consent. Since the instruction in

question uses the words "take and carry away," we need not, and we do not, take the latter words into consideration in this discussion. Concededly they would have been used in a good instruction just as they are used in this one. In other words, the State's position is, that since the word "steal," which is used in this instruction, ordinarily means and is generally understood as meaning by everybody, from the "college professor to the common laborer," to "take and carry away feloniously; to take without right or leave and with intent to keep wrongfully," there is neither verbal nor legal necessity, nor rhyme nor reason, in using the words feloniously, or in further defining larceny when once the word "steal" is used in an instruction in connection with the words "take and carry away," as here in this instruction. Bearing out their contention learned counsel for the State call our attention to the meaning of the word "steal" in its plain and ordinary sense, as used in our statute, and as the same is defined by lexicographers as well as by the law-writers and law dictionaries. It is defined, say counsel, by Webster's Unabridged Dictionary, thus: "To take and carry away feloniously; to take without right or leave," as to steal the personal goods of another. The most comprehensive definition which has been called to our attention is that found in the Century Dictionary and Cyclopedia, which defines the word "steal" to mean: "To take feloniously; take and carry away clandestinely and without leave or right; appropriate to one's own use dishonestly or without right, permission or authority." So much is said to make clear and state fairly and sharply the respective contentions made.

Going back to the definition of the crime of larceny at common law we find some little contrariety of definition, but in the main find that there must be a felonious, i. e., fraudulent, unlawful and wrongful, taking and carrying away of the personal property of an-

other, coupled with the intent to convert the property in question to the use of the taker without the owner's consent. For illustration, Lord COKE defines it thus: "Larceny by the common law is the felonious and fraudulent taking and carrying away by any man or woman of the mere personal goods of another." [3 Coke's Inst. 107.]    Mr. Wharton defines it thus: "Larceny may be defined to be the fraudulent taking and carrying away of a thing without claim or right, with the intention of converting it to a-use other than that of the owner, without his consent." [Wharton, Crim. Law (13 Ed.), sec. 1095.]

Chitty in his learned work on criminal law (3 Chitty's Crim. Law, 917) says: "To constitute this offense [larceny], therefore, in any form, there must be a taking from the possession, a carrying away against the will of the owner, and a felonious intent to convert it [i. e., the personal property] to the offender's use."

Mr. East in his Pleas of the Crown (vol. 2, p. 553) defines larceny to be "the wrongful or fraudulent taking and carrying away by any person of the mere personal goods of another from any place, with a felonious intent to convert them to his (the taker's) own use, and to make them his own property, without the consent of the owner." "But even this definition," says Prof. Greenleaf, "though admitted by PARKE, B., to be the most complete of any, was thought by him to be defective in not stating what was the meaning of the word 'felonious,' in that connection; which, he proceeded to say 'might be explained to mean that there is no color of right or excuse for the act;' adding that the 'intent' must be to deprive the owner, not temporarily, but permanently, of his property." [3 Greenleaf's Evidence, sec. 150.]    To the same general trend are all of the other authorities, which purport to define the crime of larceny as it existed at common law. [2 Bishop's New Crim. Law, sec. 758; 2 Roscoe's

Crim. Ev. 816; 1 Hawkins, P. C., p. 142; Rex v. Ham-
mon, 2 Leach, 1083.]

It is the rule in this State by our solemn statute,
as well as by all of the holdings of our courts, that
the common law is in force and that it shall be the
only rule of decision, unless, and until it has been ab-
rogated and changed by the statute itself. [Sec. 8047,
R. S. 1909; Brandon v. Carter, 119 Mo. 572.]

Turning to our statute which defines the crime
of grand larceny, we find it to read, so far as pertinent
here, thus: "Every person who shall be convicted of
feloniously stealing, taking and carrying away any
money, goods, rights in action, or other personal prop-
erty or valuable thing whatsoever of the value of thirty
dollars or more . . . . belonging to another, shall be
deemed guilty of grand larceny. . . ." [Sec. 4535,
R. S. 1909.]

It will be observed that the word "feloniously"
is put by the law-makers into (or to look at the matter
from the angle of its common law origin, is left in)
this statute as a part of the definition of grand larceny.
Except in the above section defining grand larceny, and
in section 4530 and 4531, each of which defines larceny
in connection with robbery in the first and second de-
grees, respectively, we have not been able to find that
the Legislature has left in any other criminal statute
the word "feloniously" as a part of the definition of
any other felony. Even in defining certain grand lar-
cenies which are made such by reason of the special
circumstances attending the commission thereof, the
word "feloniously" is not used in our statutes: Com-
pare section 4537 (theft of domestic fowls in the night-
time); section 4538 (theft from dwelling house, rail-
road cars, or the person of another); section 4541 (lar-
ceny by altering mark or brand, or by killing animals).

Prior to 1825 no attempt was made to define lar-
ceny. [See Mo. Territorial Laws, 1804-24, sec. 13, p.

262Mo9

18 (1804) ; sec. 16, p. 213 (1808) ; sec. 9, p. 476 (1816).]
Punishment therefor was prescribed by law, but the
elements which went to make up and which were re-
quired to describe and define this offense, manifestly,
therefore, remained as at common law.   In 1825 the
words "feloniously steal, take and carry away" first
came into our statute denouncing the theft of money,
personal goods and chattels.   [Laws 1825, sec. 25, p.
286.]   Even then horse-stealing was not so defined,
and still stood (denounced by a separate section, viz.,
section 33, p. 289, *Ibid.*) as at common law.   In 1835
the section denouncing the theft of horses, slaves, etc.,
was combined with that containing the words "felo-
niously, steal, take and carry away," and which de-
nounced grand larceny as to practically all other per-
sonal property.   [R. S. 1835, sec. 30, p. 177.]   Ever
since 1825 therefore the crime of grand larceny defined
in said section 4535, Revised Statute 1909, has been
defined uniformly (exceptions as to special offenses
above noted, excepted) by the use of the words "felo-
niously stealing, taking and carrying away."   We have
seen the necessity which existed at common law to use
this word "feloniously" or its apt synonyms in defin-
ing larceny, and we see that while the Legislature had
the power to relieve us from the necessity of so defin-
ing it, for some reason, sufficient to itself no doubt,
it has not seen fit to do so.   That we might or might
not deem it wise to do so, is beside the question; the
fact remains that the word "feloniously" as a word of
legal description, has remained in our larceny statute
for ninety years precisely as it formerly stood in a
majority of the common law definitions of this crime.
The Legislature put this word—which upon some con-
siderations may appear technical, useless and tauto-
logical—into our statute, or to be more exact left it
therein, and it is for the Legislature to take it out.
Uniformly almost, throughout the ninety years of the
statute's existence in its present form (as to this

point), this court has by its decisions required that instructions defining this crime make necessary the finding of a felonious intent. Touching this phase SCOTT, J., in a very early case, said:

"It will thus be seen from what has been observed, that there cannot be a larceny without a felonious intent. That the taking the personal goods of another without this intent, may be a trespass, but it cannot amount to larceny. The prisoner, then, might have done every act supposed by the instruction of the court without being guilty of a felony. The instruction defined a trespass, and not a larceny, and it was error to have told the jury that the commission of the acts mentioned in it, rendered the prisoner guilty of larceny." [State v. Witt, 9 Mo. l. c. 665.]

Likewise, in the very late case of State v. Richmond, 228 Mo. l. c. 366, GANTT, J., said:

"But the first instruction of the court in this case was insufficient in that it did not require the jury to find that defendant feloniously took, stole and carried away the mare mentioned in the information, nor did it require them to find that defendant took, stole and carried away the mare with the felonious intent to convert the same to his own use without the consent of the owner, and therefore we think it falls short of the instruction in the Waller case, 174 Mo. 518."

To the same effect in substance are the holdings in the cases of State v. Gray, 37 Mo. 463; State v. Shermer, 55 Mo. 83; State v. Moore, 101 Mo. l. c. 329; State v. Speritus, 191 Mo. 24; State v. Fritchler, 54 Mo. 424; State v. Gresser, 19 Mo. 247; State v. Lackland, 136 Mo. 26; State v. Weatherman, 202 Mo. 6; State v. Rutherford, 152 Mo. 124; State v. Ware, 62 Mo. l. c. 602; State v. Campbell, 108 Mo. 611; State v. Owen, 78 Mo. l. c. 371. Similar is the language of the various text-writers upon this subject. [Kelley's Crim. Law & Prac. 657; 2 Bishop's New Crim. Law, sec. 840; 4 Black Com 232; 25 Cyc. 45, and cases cited.]

The case is a close one upon the facts. The testimony of the guilty principal, if not well-nigh incredible, is at least subject to the very gravest suspicion. For while it leaves no doubt as to the guilt of Bell, who confessedly committed the larceny, it does, when viewed as a whole, leave huge doubts as to the guilt of defendant. In such cases the jury ought to have been instructed touching the felonious intent of Bell at least, when he took the feed in question, and to this by a proper instruction should have been tacked the intent, the *animo furandi,* of defendant himself when as alleged he advised and counseled this theft. No authority anywhere can be found upholding this instruction. It is bad by all the decisions and by the textbooks, in practically every jurisdiction where larceny is defined as our statute defines it or where the common law is in force. Therefore, though it be the passing fancy of the hour to rejoice more over the ninety and nine guilty, who, though *legally* convicted, are paroled, than over the one of doubtful guilt *illegally* convicted, to whom our judgment gives a lawful trial, we must yet abide, as our official oaths enjoin, by the statutes and the Constitution as the Legislature and the people have ordained them.

II.   The question as to the form of such an instruction now becomes pertinent. This is a seriously debatable and a most puzzling problem. In a case involving larceny the offense should be defined. Manifestly this may be done either by a separate instruction, as was approved in the case of State v. Gray, 37 Mo. l. c. 464, or by appropriately incorporating an apt definition of larceny in the main instruction, as was done in the case of State v. Yates, 159 Mo. 525. Ordinarily the words "felonious" and "feloniously" have no place in an instruction in a criminal case. [State v. Helton, 234 Mo. 559; State v. Cummings, 206 Mo. l. c. 624;

Larceny:
Form of
Instruction.

State v. Scott, 109 Mo. 226.] Likewise, ordinarily, it is not necessary to define them. [State v. Barton, 142 Mo. l. c. 455; State v. Rowland, 174 Mo. 373; State v. Woodward, 131 Mo. 369; State v. Miller, 159 Mo. 113; State v. Cantlin, 118 Mo. l. c. 111.] But we have seen that at common law all the definitions of larceny either contained the word "felonious" applied to the intent with which the property was taken, or conveyed by circumlocution and the use of synonymous words, the idea that the taking was with a felonious intent. We have also seen that our statute since the year 1825 has contained as a part of the definition of grand larceny the word *"feloniously."* This former state of the common law definition, and the present state of our definition, make it plain by all of the rules of law and of statutory construction that since the word *"feloniously"* is left in our statute, it is there for some purpose, to-wit, that by reason of it our statute retains so much of the common law definition of larceny as is comported by this word. That the use then of the word "feloniously," or some synonymous words properly defining larceny, is required in an instruction in a prosecution for grand larceny, there is no chance for doubt. In so requiring, it is clear that *larceny is an exception to the general rule* which we note, supra, which says that *the words "felonious" or "feloniously" need not be used in an instruction, and if used they need not be defined.* Even in prosecutions for robbery in the first degree, on all-fours by analogy both in the respect that a larceny is committed ordinarily and that the statutes defining it likewise use the word "feloniously," we find no such invariable rule. On the contrary the general rule is in robbery as in ordinary cases, that feloniously need not be used in the instruction, or if used that it need not be defined. [State v. Woodward, supra; State v. Cantlin, supra; State v. Rowland, supra.]

There is much contradiction of authority in the many reported cases in this State as to whether the specific word "feloniously" should be used in an instruction for grand larceny to define the intent with which the taking was accomplished, or whether synonymous words aptly describing the intent as we find it in a respectable number of the definitions of larceny at common law would suffice. A small number of our cases apparently adhere half-heartedly to the latter rule (State v. Moore, 101 Mo. 328; State v. Owen, 78 Mo. 367; State v. Weber, 156 Mo. 249); the later cases succinctly and clearly (the late case of State v. Ward, 261 Mo. 149, and State v. Yates, 159 Mo. 525, excepted) hold that the use of the specific word "feloniously" with reference to the intent, is necessary. [State v. Weatherman, 202 Mo. 1. c. 9; State v. Richmond, 228 Mo. 1. c. 366.] So also did the very early cases: State v. Witt, 9 Mo. 663; State v. Gray, 37 Mo. 463. The case of States v. Yates, 159 Mo. 525, squarely holds that it is not necessary to use the specific word "feloniously" if synonymous words are used. But one or the other of these methods must be followed in an instruction for grand larceny. The instruction here, we repeat, follows neither, and is therefore erroneous from any view. Having regard to many of the common law definitions of larceny which omitted the word "felonious" and the variant holdings on this point and on analogous questions by this court, we conclude that an instruction for grand larceny ought to require the finding by the trial jury that the taking was with a felonious intent, but that the use of the specific words "felonious" or "feloniously" is not absolutely a prerequisite. This intent may be aptly defined by terms indicating the wrongful and fraudulent, or criminal nature of the taking, coupled with words charging the taking as being without the owner's consent and with the fraudulent intent to convert the property to the use of the taker and to deprive the owner thereof per-

manently. [Bodee v. State, 57 N. J. L. 140; State v. Slingerland, 19 Nev. 135; State v. Shepherd, 63 Kan. 545; State v. Yates, 159 Mo. 525; State v. Speritus, 191 Mo. l. c. 36; 35 Cyc. 148, and cases cited.]

III. Complaint is made that the jury was not required to find that the defendant in the alleged procuring of said Bell to commit the larceny charged, acted with a felonious or criminal intent. We think this contention must be sustained. It should need no citation of authority to prove that if defendant did not intend that Bell should steal the feed, but intended, as defendant's theory of defense urges, that Bell should buy the feed, the issue of defendant's criminal intent should have been left to the jury under appropriate instructions. The defendant as an accessory before the fact merely was not liable for a crime committed by Bell which was contrary to, or the result of an absolute, or even a substantial departure from, or disregard of defendant's instructions. Defendant in what he said to Bell in counselling, or commanding the crime, must have had a criminal (here since the crime was grand larceny, a felonious) intent, though he need not have intended the precise crime which was committed. Since it is sufficient if the crime done by the principal is the probable consequence of the crime advised by the accessory, as if one hire another to burglarize a house and in so doing the principal kill the owner of the house.

IV. The complaint made that the second instruction is erroneous because it assumes that Bell stole the feed, without leaving this fact as an issue to be found by the jury, would ordinarily be well taken, but here the whole case rests on the sworn admission of Bell that he did steal this feed. No one denies it. Defendant does not controvert it, but in terms concedes

*Margin notes:* Accessory: Must Act With Felonious Intent in Grand Larceny.

Instruction: Assumption of Fact.

it. It is not an issue then in the case. The issue is, did defendant advise, procure or command the commission of the admitted theft of Bell? We disallow this specific point; though again suggesting that the intent with which defendant counselled and advised said Bell, must have been a felonious intent.

Other matters are complained of, but it is not likely that they will occur again, should the case be again tried, so we need not add to the length of these views by a discussion of them.

From what is said it follows that the case should be reversed and remanded, which is accordingly ordered. *Walker, P. J.,* concurs in separate opinion; *Brown, J.,* concurs in result.

WALKER, P. J.—(Separate opinion).—That the case learning on the subject is in accord with the conclusion of my learned brother that an instruction defining grand larceny should contain the words "with felonious intent" I do not question; but where, as in this case, the words "unlawfully steal, take and carry away" are employed, the use of the omitted words of which complaint is made, is not only redundant, but tautological.

The word "felony" simply designates crime in a general way, and larceny is but a specific designation of one of the many forms of felony; when, therefore, one is said to have unlawfully stolen, taken and carried away a certain thing, the intent and the crime are indubitably declared and nothing is added to the clearness or force of the charge by adding that the offence was committed with "felonious intent."

Bound in the throes of precedent, as is said by my learned brother, it may be necessary to use these words in the instruction, and if so I am impelled to say what I have herein said that the necessity of legislative action may be emphasized. I therefore concur in the result reached in the majority opinion.